THE STATE OF MONTANA, PLAINTIFF AND RESPONDENT, *v.*
ARNOLD RAYMOND LAGGE, DEFENDANT AND APPELLANT.
No. 10605.
Submitted December 11, 1963. Decided January 30, 1964.
Rehearing denied February 24, 1964.
388 P.2d 792.

Sandall, Moses & Cavan, Billings, John P. Acher, Great Falls (argued), for appellant.

William J. Speare, Billings (argued), Donald A. Douglas, Helena (argued), Forrest H. Anderson, Helena, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal by defendant, Arnold Raymond Lagge, hereinafter referred to as appellant, from a conviction of the crime of rape in the district court of the thirteenth judicial district.

On the night of December 16, 1962, the prosecutrix, a girl of fifteen years of age, was babysitting for Beulah Straight at 211 North 15th Street, Billings. Prosecutrix put Beulah's four children in their respective beds by 9:00 P.M., the oldest child being eleven years old. After putting the children to bed, the prosecutrix listened to the radio and did her homework until approximately 11:00 P.M. at which time one Bob Allison, a boyfriend of Beulah Straight's, came to the house but left some five minutes later. The prosecutrix continued to listen to the radio until it went off the air, prepared for and retired to bed about 12:15 A.M. The bed in which the prosecutrix retired to was located near the door to the front of the house. The prosecutrix testified that she was asleep within five minutes.

Shortly thereafter, the prosecutrix was awakened by the sounds of the house dog and found a person standing over her beside the bed. This person was a man and started to make advances upon the prosecutrix's person. The prosecutrix noticed the smell of liquor on her assailant's breath and testified that the man threatened her and told her to be quiet when she started to scream. The prosecutrix was finally able to get up and run into the children's bedroom where she shook the oldest girl and tried to awaken her so that she could go for help. Before she could accomplish this act, her assailant came in behind her, carried her back into the first bedroom where he struck her in the jaw, said "God damn it, shut up" and, hitting her in the stomach, knocked her out and had intercourse with her. Shortly thereafter he departed. The prosecutrix then called her mother, the time was approximately 1:00 A.M. At approximately 2:00 A.M. the prosecutrix was examined by her family physician, Dr. Eugene Kronmiller, who testified that an act of sexual intercourse had recently been accomplished upon her.

Throughout the acts that transpired after the prosecutrix awoke, there were no lights on in the house but there was some illumination from sources of light outside the house. Still, the interior of the house was in comparative darkness.

The prosecutrix made a statement in the presence of Officer Stirens at 3:30 A.M. on the morning of the attack and rape on her person. In this statement the prosecutrix gave a brief description of the person who attacked her. At somewhere around 4:30 A.M. of the same morning, the prosecutrix was shown a photograph of the defendant. On cross-examination, the prosecutrix testified that when she was shown this photograph she made a statement to the effect: "That's not the person." Later however, while the defendant was in a police lineup, the prosecutrix did identify him as her assailant and corroborated this identification by recognizing his voice as the voice of the person who had assaulted her.

■ During defendant's cross-examination of the prosecutrix and after the prosecutrix had testified that she did not identify the defendant by the use of a photograph, the defendant moved the court to "require the prosecution and the police department to produce the picture of the defendant which was used for means of identification of the defendant in this case." Defendant alleges this motion was an attempt to obtain material for cross-examination and impeachment purposes. The court refused to grant the motion. The defendant predicates his first specification of error on this refusal which is: "The court erred in refusing to require the prosecution to produce the picture of the defendant, referred to by the prosecuting witness for use in cross-examination by the defendant."

Sections 93-1901-11 and 93-1901-12, R.C.M.1947, establish the criteria by which a witness may be impeached. The witness had testified that she did not identify the defendant by a photograph but by a police lineup.

At this stage of the trial, neither the trial judge, the prosecuting attorney, nor the defense counsel seemed aware of the fact that there were two photographs of the defendant. As before indicated, the prosecutrix did not identify defendant from any photograph, but assuming that somehow this failure to identify a photograph might have a bearing on identification, no prejudicial error in the trial court's ruling was made. As later developed, the chief of police testified to two photographs of defendant, one taken some thirteen years prior to trial and one taken some three years prior to trial. The police chief testified that it was the old photograph which had been shown to the prosecutrix and which she could not identify as her attacker. Meanwhile, the prosecuting attorney had a newer photograph, which he did not know had ever been displayed to the prosecutrix. The two photos are exhibits on this appeal, and the appearance of the defendant is considerably different in the two photos. It would seem that the inability of the prosecutrix to identify her assailant from the old photo strengthens her subsequent

identification from the police lineup and voice. In any event, no prejudicial error could result because no impeachment could be possible under the circumstances here.

In addition, the record further indicates that defendant's counsel was not too concerned in obtaining the photograph. He did not subpoena the chief of police as he had statutory authority to so do either before or during the trial. Sections 94-8901 and 94-8902, R.C.M.1947. The defendant also objected to the prosecution's attempt to introduce the photograph later in the trial. Under the existing circumstances, the trial court did not abuse its discretion in denying the motion to produce.

The defendant next alleges that the court erred in refusing to give defendant's offered instruction 24, a cautionary instruction taken from CALJIC, No. 510. Instruction 24 reads: "A charge such as that made against the defendant in this case is one, which, generally speaking, is easily made, and once made, difficult to disprove even if the defendant is innocent. From the nature of a case such as this, the complaining witness and the defendant usually are the only witnesses. Therefore I charge you that the law requires that you examine the testimony of the prosecuting witness with caution."

The defendant cites adequate California law which does allow cautionary instructions quite readily. But the question of allowing cautionary instructions has been settled previously here in Montana so we need not look to other jurisdictions for aid or assistance.

In State v. Peterson, 102 Mont. 495, 502, 59 P.2d 61, 64, while discussing an instruction similar in context to the instant one, we quoted from several other Montana cases saying: "While this court has said: 'It is undoubtedly true that charges such as this are easy to make and hard to defend against, even by one who is guiltless; and where the state relies upon the uncorroborated testimony of the prosecutrix, the jury should be cautious of convicting upon such evidence.' (State v. Gaimos, 53 Mont. 118, 162 P. 596), it has twice declared that the trial

court did not commit error in refusing to give an instruction similar to the one under discussion. State v. Keeler, 52 Mont. 205, 156 P. 1080, L.R.A.1916E, Ann.Cas. 1917E, 619; State v. Mihalovich, 69 Mont. 579, 222 P. 695. [We restated the preceding portion in State v. Stevens, 119 Mont. 169, 181, 172 P.2d 299.] In each of these cases the propriety of giving such an instruction in any case is doubted, and the court's statement indicates that, if proper in any case, it is only where there is the suggestion of private malice and revenge apparent. Nothing of the kind appears in the case at bar." We then went on to point out that the testimony involved in the Peterson case was corroborated and that the court did not err in refusing the instruction.

In both the Keeler case, supra, and the Mihalovich case, supra, an entirely different worded instruction than the instant one was in question, while in the Peterson case, supra, a similarly-worded instruction was involved. In the Stevens case, supra, while the instruction's wording was not quoted, it was also a cautionary instruction. However, in all three cases, the intention of the instruction involved—cautionary instructions —and their context are identical to the instant instruction.

After reading the record we find no inconsistency in the prosecutrix's testimony, no contradictory evidence, no proof of falsity on any of her testimony, no testimony offered which would tend to destroy her testimony, in short no testimony of any type that would establish a suggestion of private malice or revenge against the defendant by the prosecutrix—the criteria established by the Keeler, Mihalovich and Peterson cases, supra, by which a cautionary instruction in a rape case might be applicable.

Defendant's third specification is that the trial court in modifying defendant's instruction 6 by striking paragraphs 5 and 4, which were in effect section 93-2001-1, subds. (6) and part of (5), R.C.M.1947, committed error. Defendant expounds the theory that the court erred in striking these paragraphs on

the grounds that they did not apply to criminal cases and cites ample authority to substantiate this contention. We agree with defendant's argument that these paragraphs are applicable to criminal cases, see section 93-2001-1, R.C.M.1947; State v. Neely, 90 Mont. 199, 208, 300 P. 561, however these paragraphs are not applicable without qualification.

A careful reading of the record does not substantiate defendant's contention that the trial court struck these paragraphs because of their inapplicability to criminal cases. True, the prosecuting attorney argued thusly, but, the trial court did not state specifically why it had struck these paragraphs. After reading the instructions given by the court in their entirety, we feel paragraph 4 was repetitious, that the trial court might have recognized this, and struck it for that reason.

We have often held that it is not error for a trial court to refuse to give a requested instruction, or by implication a portion thereof, if the instruction's legal theory was adequately covered by the instructions that were given and as long as the rights of the defendant were fully protected. State v. Kendrick, 127 Mont. 403, 406, 265 P.2d 201.

Defendant further augments his argument by contending paragraph 5 was applicable in this case because the State had failed to call Beulah Straight, a person whose name appeared on the information, the person who apparently suggested the defendant's name to the prosecutrix as her assailant and who apparently was present in the courtroom during the course of the trial. Defendant cites State v. Neely, 90 Mont. 199, 300 P. 561, for authority.

The Neely case, supra, would be concrete authority if the facts were even similar. In the Neely case the defendant was in effect claiming entrapment by a person who the State failed to call as a witness, a person who had been in the courtroom during the course of the trial. The defendant argues that Beulah Straight should have been called as a State's witness so that he could determine or cross-examine her as to why she

had suggested his name to the prosecutrix. The prosecutrix had identified the defendant in a police lineup and by a voice test. We cannot see where the defendant's rights were placed in jeopardy or that his case was prejudiced by the fact that the person who may have initially suggested his name was not called by the State as a witness. It matters not who suggests the defendant as a prime suspect, a police officer or a private individual. The ultimate fact is that the prosecutrix *did* identify the defendant visually and vocally and the defendant's rights were not prejudiced by the State not calling Beulah Straight as their witness.

Defendant's fourth and fifth specifications of error are "The court erred in denying defendant's motion for dismissal on the grounds of insufficient proof.", and "The court erred in denying defendant's motion for a new trial." The defendant predicates his argument in support of these two specifications of error on the determination of the preceding three specifications of error.

■ The judging of human testimony is not infallible, it varies from witness to witness, from subject matter to subject matter and from person to person whose duty it is to evaluate the testimony. Our judicial system has developed with this ever-present problem. We have trials by jury, to ascertain the truth, by testing the credibility of witnesses and the jury evaluating their testimony. It is not for us, an appellate court, to determine the credibility of a witness or to evaluate the testimony, rather, that is a function for a jury and their decision will not be disturbed by us without a clear showing in the record that either perjury, impeachment or extenuating circumstances were clearly present. State v. Pankow, 134 Mont. 519, 522, 333 P.2d 1017. No extenuating circumstances, perjury or impeachment are here present.

■ When criminal cases are appealed, we are governed by legal rules long established. "Disputed questions of fact and the credibility of witnesses will not be considered on ap-

peal. Determination of such matters is within the province of the jury, and so long as there is substantial evidence to support the verdict, it cannot be disturbed on appeal." State v. Peschon, 131 Mont. 330, 339, 310 P.2d 591, 596.

The jury resolved any claimed conflict in the evidence, there was substantial justice done and the trial court did not exceed its authority in its rulings.

The judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES, JOHN CONWAY HARRISON and ADAIR concur.