THE STATE OF MONTANA, Plaintiff and Respondent, v.
DANIEL FRANCIS DUNN, Defendant and Appellant.

No. 11815.
Submitted May 12, 1970.
Decided June 30, 1970.
472 P.2d 288.

John Leslie Hamner, argued, Butte, for appellant.

Robert L. Woodahl, Atty. Gen., John C. Weingartner, Asst. Atty. Gen., argued, Helena, Mark P. Sullivan, County Atty., F. Lee Williams. Deputy County Atty., Butte, for respondent.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

Defendant was convicted of a criminal sale of dangerous drugs by jury verdict in the district court of Silver Bow County before the Hon. James D. Freebourn, district judge. From that verdict and judgment, defendant appeals.

On Sunday afternoon, September 14, 1969, defendant Daniel Francis Dunn, age 18, and his friend George Staschel, age 16, drove to the home of Kathy Best, age 15, which is located about a block west of the Hawthorne school in Butte. Kathy, who was painting a fence, went over to the car and proceeded to carry on a conversation with the two occupants. She asked if they had any "acid" to which defendant replied they had. They then made plans to "drop acid", it being understood that defendant would provide the pills.

Kathy went over to see her friend, Cynthia Roth, age 15, who lived nearby. Kathy asked Cynthia if she wanted to "drop

acid'' and Cynthia indicated she did. As Cynthia was ''ground-ed'' and could not leave home, Kathy alone went for a ride with defendant and Staschel in defendant's car. Defendant gave Kathy 1½ pills. Kathy ate the half pill and put the remaining whole pill in her pocket. Defendant then drove Kathy back to Cynthia's house where Kathy got out. Defendant and Staschel had no further contact with the girls. Kathy gave Cynthia the whole pill which Cynthia consumed.

Thereafter both Kathy and Cynthia began to hallucinate. Kathy indicated ''everything was moving, and time speeded up.'' Her pupils were dilated, she was disoriented, ''felt differ-ent'', ''high'', and talked constantly. Kathy had taken drugs on a previous occasion and had experienced the same reaction then. Cynthia's reaction was similar to Kathy's except that it was more pronounced.

Defendant was arrested the following day on the basis of a complaint filed in justice court in Butte charging him with a criminal sale of dangerous drugs. As this charge constituted a felony, a preliminary hearing was set for October 2, 1969.

On September 30, 1969, the county attorney filed a written motion in the district court asking leave to file an information against defendant therein without a preliminary hearing. This motion was supported by an affidavit signed by him, the pur-pose of which was to establish probable cause The district court granted the motion over the defendant's objection.

The information as filed in the district court charged defen-dant with a criminal sale of dangerous drugs in violation of sec-tion 54-132, R.C.M.1947. Defendant plead ''not guilty''. The case came on for trial on November 13, 1969, and four days later the jury returned a verdict of guilty. Thereafter judgment was entered on this verdict. Following the district court's denial of his motion for a new trial, defendant appealed from the ver-dict and judgment.

Defendant lists 17 issues for review upon this appeal. For purposes of this opinion, these issues will be grouped functional-

ly into four categories: (1) issues relating to the contents and filing of the information; (2) issues relating to pretrial discovery; (3) issues relating to the admissibility and sufficiency of the evidence; and (4) issues relating to jury instructions. ·

Defendant levels his initial attack at the direct filing and sufficiency of the information. His contentions here are threefold: (1) that there was an insufficient showing of probable cause to permit the filing of a direct information without a preliminary hearing, (2) that under the facts here, defendant had a vested right to a preliminary hearing, and (3) the information is deficient in several particulars required by law.

Defendant argues that under Montana's new Code of Criminal Procedure, a motion for leave to file an information direct must be supported by (a) the affidavit of a witness having direct knowledge of facts constituting probable cause, and (b) some supporting evidence for the affidavit.

The controlling statutory requirements are found in section 95-1301(a), R.C.M.1947:

"The county attorney may apply directly to the district court for permission to file an information against a named defendant. The application must be by affidavit supported by such evidence as the judge may require * * *"

The county attorney's affidavit supporting his motion for leave to file an information against defendant directly in the district court reads: ·

"That on or about the 15th day of September, 1969, a Complaint was made at the office of the Silver Bow County Attorney by Dr. Richard J. Best of 3002 Atherton Lane, Butte, Montana, to the effect that the defendant, Dan Dunn, had given the complaining witness' daughter, Kathy Best, age 15, a type of dangerous drug which caused her to hallucinate on or about September 14, 1969. Statements were taken from Kathy Best and Cynthia Roth and George Staschel who all confirmed this act. That as a result of the pills supplied by Dan Dunn, both Cyn-

thia Roth and Kathy Best hallucinated in the presence of their parents, respectively Urban Roth and Dr. Richard J. Best.''

The plain language of the statute authorizes the county attorney to make the application and requires the application to be made by affidavit. This constitutes express authorization for the county attorney to make the supporting affidavit. The statute contains no requirement that it be made by an ''eye-witness'' or ''some witness having competent knowledge of a state of facts leading to probable cause'' as contended by defendant. ''In the construction of a statute * * * the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted * * *''. Section 93-401-15, R.C.M.1947.

Nor does the statute require any supporting evidence beyond that contained in the affidavit unless additional evidence is required by the district judge. If the evidence contained in the affidavit is sufficient to satisfy the district judge that probable cause exists, nothing further is required. Here the county attorney's affidavit states facts supporting a finding of probable cause rather than mere legal conclusions. While it is not as precisely drawn as defendant would like, the affidavit indicates in substance that defendant had given Kathy Best a type of dangerous drug that caused her to hallucinate on a stated date, that three named witnesses confirmed this, and that the parents of Kathy Best and Cynthia Roth witnessed the girls hallucinating in their presence. On the basis of this showing, the district judge was satisfied that probable cause existed and permitted the direct filing of the information in district court. In this, we find no error.

Defendant additionally contends that under the facts of the instant case his right to a preliminary hearing had vested and accrued and could not be circumvented by a direct filing of the information. Defendant points out that prior to any application to the district judge for leave to file directly in district court,

the justice of the peace had ordered a preliminary hearing and fixed a time and place therefor. As a result, according to defendant, he was deprived of the opportunity to ascertain in advance of trial the knowledge possessed by Dr. Best concerning identification of dangerous drugs and accordingly was unable to prepare his defense.

The purpose of the preliminary hearing is to determine whether there is probable cause to believe a felony has been committed by the defendant. Section 95-1201, R.C.M.1947. And, if the evidence so indicates, defendant must be held to answer an information in the district court. Section 95-1202, R.C.M. 1947. A showing of the same probable cause by affidavit and such supporting evidence as the judge may require is necessary to authorize a direct filing in district court. Section 95-1301, R.CM.1947 and Commission comment thereon. If, as here, such affidavit and supporting evidence indicates probable cause to the satisfaction of the district judge, leave may be granted to file an information directly in the district court. Section 95-1301, R.C.M.1947. Thus, defendant has no vested right to a preliminary hearing, either method procedure being permissible at the outset. The Commission comment to section 95-1202, which we quote with approval, succtinctly disposes of defendant's contention in this language:

"* * * It is intended that one be committed to this means of initiating a prosecution once a preliminary examination has begun. However, simply scheduling a preliminary hearing after the initial appearance, does not commit the prosecution to this procedure. One of the other alternatives may be employed, or use of the grand jury indictment."

But defendant also contends that a preliminary hearing should have been held to enable him to discover the information and knowledge of Dr. Best and others in the Butte area relating to their qualifications in identification of dangerous drugs. This patently relates to expert testimony that might be given at the trial rather than a necessary subject of inquiry at a prelimi-

nary hearing. As probable cause was established to the satisfaction of the district judge by the evidence contained in the supporting affidavit, defendant has no right to a preliminary hearing in order to conduct a "fishing expedition" for pretrial discovery of all the evidence of the prosecution that might be used at the trial.

The Commission comment to section 95-1202 expresses the intent thus:

"The preliminary examination is not intended to be a trial of the issues of the case, nor is it considered a part of the trial. * * * It is only a preliminary procedure for determining whether there is 'probable cause to believe a felony has been commtted by the defendant.' Nothing more is required. As a result subsection (a) may not be expanded into a detailed 'fishing expedition' allowing for complete discovery by either side. The section must only be used to determine whether there is sufficient reason to continue the case through the filing of an information as provided by 95-1302"

The next contention of defendant is that the information does not state facts sufficient to constitute an offense as measured by the requirements of section 95-1503, R.C.M.1947. He argues that the charge contained in the information does not allege the act complained of, the person injured, the time and place of the offense with sufficient certainty, the species of the drug, or the specific drug involved. As a result, defendant contends he was unable to properly defend himself and remains subject to being charged again with the same offense.

The statutory requirements of an information are contained in section 95-1503, R.C.M.1947, which, insofar as is pertinent to the instant case, provides:

"95-1503. Form of charge. A charge shall:

\* \* \* \* \* \* \* \* \* \*

"(c) Charge the commission of an offense by:

"(1) stating the name of the offense;

"(2) citing in customary form the statute &ast; &ast; which the defendant is alleged to have violated;

"(3) stating the facts constituting the offense in ordinary and concise language and in such manner as to enable a person of common understanding to know what is intended;

"(4) stating the time and place of the offense as definitely as can be done; and

"(5) stating the name of the accused, if known &ast; &ast; &ast;.

(d) If the charge is by information &ast; &ast; &ast; it shall include endorsed thereon, the names of the witnesses for the state, if known."

Section 54-132 of the Dangerous Drug Act (Sections 54-129 through 54-138, R.C.M.1947) alleged to have been violated provides in pertinent part:

"Criminal sale of dangerous drugs. (a) A person commits the offense of a criminal sale of dangerous drugs if he sells &ast; &ast; &ast; any dangerous drug as defined in this act &ast; &ast; &ast;".

A sale as defined in the Act means selling, exchanging, giving or disposing of to another. Section 54-129(k). A dangerous drug as used in the Act means any depressant, stimulant, hallucinogenic or narcotic drug. Section 54-129(g).

Although section 95-1503, R.C.M.1947, quoted above, contains the additional requirements of citing the statute violated and stating the time and place of the offense as definitely as possible which were not specified in its predecessor, section 94-6403, R.C.M.1947, of the former criminal code, the basic test of the sufficiency of the language of the information remains as before, viz: Would a person of common understanding know what is intended to be charged? State v. Board, 135 Mont. 139, 337 P.2d 924. Or stated another way: Is the defendant apprised of the charges brought against him so as to prevent surprise? State v. Bogue, 142 Mont. 459, 384 P.2d 749 overruling State v. Hale, 129 Mont. 449, 291 P.2d 229. We see no reason why the contents of the supporting affidavit filed in the case in the presence of defendant and his counsel who objected to its con-

tents cannot be considered in determining the meaning of the language contained in the information.

Tested in the light of the foregoing principles, we hold the language of the information sufficient. It states the name of the offense—a criminal sale of dangerous drugs; it cites the statute violated—section 54-132. The facts constituting the offense are set forth so that a person of common understanding knows what is intended to be charged—a criminal sale of a dangerous hallucinogenic drug to Kathy Best. The time and place of the offense is stated with sufficient particularity, the exact time and place not being a material element of the charge—on or about September 14, 1969 in Silver Bow County, Montana. The name of the person charged is stated—Daniel Francis Dunn. The names of all witnesses for the state and their addresses are endorsed on the information. And although the precise chemical name of the dangerous drug could not be stated because it had been ingested by the girls and was unavailable for exact identification, a person of common understanding would know that the drug involved in the charge was a hallucinogenic drug the sale of which is prohibited by section 54-132 of the Montana Dangerous Drug Act and the definitions contained therein. Thus, there is simply no merit in defendant's contention that he did not know what he was charged with, or that he was surprised at the trial, or that he was unable to properly prepare his defense.

Nonetheless defendant contends the information is fatally defective because it does not particularize the charge with sufficient clarity to prevent a later charge for the same offense. We recognize the constitutional prohibition against putting a person twice in jeopardy for the same offense. Article III, Sec. 18, Montana Constitution; Amendment V. United States Constitution. However, Montana law specifically prohibits any further prosecution of the defendant in the instant case, section 94-6808.3, R.C.M.1947, providing in material parts:

"When prosecution barred by former prosecution. Provided the offenses, if more than one, were known to the attorney prosecuting upon sufficient evidence to justify the filing of an information or the issuance of a warrant of arrest and were consummated prior to the original charge, and provided the jurisdiction and venue of the several offenses lie in a single court, *a prosecution based upon the same transaction as a former prosecution is barred by such former prosecution under the following circumstances*:

\* \* \* \* \* \* \* \* \* \*

"(c) *The former prosecution resulted in a conviction.* \* \* \*". (Emphasis supplied.)

In the instant case there was only one transaction—one sale—with the preliminary statutory qualifications clearly met. Thus, the statute bars any further prosecution of defendant, rendering his contention without substance.

Defendant next mounts an assault on the alleged denial to him of pretrial discovery so as to enable him to properly prepare his defense. Specifically he cites as error the district court order denying him the right to take the deposition of Dr. Richard J. Best in advance of trial.

Dr. Best, a medical doctor in Butte and father of Kathy Best to whom defendant was charged with selling a dangerous drug, was one of the state's witnesses whose name and address was endorsed on the information. Defendant filed a written motion for a district court order setting a time and place for taking his deposition and those of other state's witnesses pursuant to section 95-1802(a) (1), R.C.M.1947. This motion was supported by an affidavit of defendant's attorney that he had mailed to Dr. Best and the other state's witnesses a request that they contact him "to arrange an interview respecting their knowledge or information of the facts of this matter." The affidavit stated that 8 days later Dr. Best and three other state's witnesses had not contacted him but that one state's witness had made an appointment with him. The affidavit concluded that therefore de-

fendant's attorney "is led to believe * * * each of them are apparently unwilling to p r o v i d e relevant information * * *". Defendant's motion was argued and denied in its entirety by the district court some three weeks in advance of trial.

Granting that section 95-1802(a) (1) permits a defendant to take the deposition of a witness unwilling to provide relevant information whose testimony is material and whose deposition is necessary to prevent a failure of justice, defendant's showing here by affidavit falls far short of establishing these essential requirements. There is no showing whatever of the necessity of taking Dr. Best's deposition in order to prevent a failure of justice. Nor is there any indication of either a request or demand to Dr. Best for the taking of his deposition. The only showing made in the affidavit is a letter requesting Dr. Best to contact defendant's attorney and arrange an interview to which Dr. Best had not responded 8 days later. A perfunctory request by mail to a local witness asking him to contact defendant's attorney to arrange an interview falls far short of establishing the witness's unwillingness to provide relevant information or give a deposition. As the statutory requisites for taking Dr. Best's deposition were never established, defendant's rights were not violated.

Directing our attention to the third group of issues relating to the admissibility and sufficiency of the evidence at the trial, defendant first contends the testimony of Kathy Best that defendant told her that he had some "acid" was improperly admitted over his objection. Defendant contends this oral admission is inadmissible because the state did not furnish him a list of witnesses to its making, as required by section 95-1804(a), R.C.M.1947, following his motion therefor.

The testimony of Kathy Best at the trial indicated that defendant made the oral admission in the presence of Kathy Best and George Staschel. Her testimony and the colloquy of court and counsel proceeded in this manner:

"Q. So you asked Dunn if he had any acid? A. Yes.

Q. What did he say?

"MR. HAMNER: (counsel for defendant) Objected to—

"THE COURT: Overruled. It is in front of him?

"MR. HAMNER: Yes, Your Honor.

"THE COURT: It was in front of Dunn.

"MR. HAMNER: The information may not have been discovered, and the Court has already made an order and I have received nothing of the admission or confession.

"MR. SULLIVAN (County Attorney): We are proving our case. This certainly is a fact if Dunn was there.

"THE COURT: Any statement made in his presence is admissible here. Some of these witnesses you haven't talked to, you have a right now to ask and you will be granted the right to talk to them. Surely any statement made in his presence, as long as they lay a foundation, is admissible. You may answer.

"MR. SULLIVAN: Can you answer the question or would you like it repeated? Please read the question (Last question read by the Reporter.)

"A. He said, yes, he did."

The record discloses that defendant's counsel did not exercise his right to talk to the witness as offered by the court. Nor does the record support counsel's inference that the court had previously ordered the state to furnish him a list of witnesses to the admission, the order being silent on this particular pretrial motion of defendant.

 It should be noted that defendant's attorney did not claim surprise concerning the oral admission in question nor did he go so far as to indicate that he did not know about it. The basis of his objection was on purely technical grounds, viz. that the *information may not have been discovered* and that he was entitled to discovery of the names of the witnesses to the admission. The only witness to the admission whom he had not talked to was Kathy Best and Judge Freebourn offered him the opportunity to talk to her before she answered the question. As

the purpose of section 95-1804(a) is clearly to prevent surprise and as no surprise was claimed by defendant, the purely technical objection raised by defendant here was surely waived under the circumstances disclosed by the record here.

Defendant next claims that the evidence at the trial is insufficient to support the conviction. The principal thrust of his argument is that there was insufficient proof that any identifiable dangerous drug the sale of which is prohibited by the Dangerous Drug Act had been given by defendant to Kathy Best.

Although the instant case is admittedly complicated by the fact that the pills had been ingested by the girls and were consequently unavailable for precise chemical analysis, we are unable to accept defendant's implied premise that this renders the evidence insufficient to sustain his conviction. As long as there is substantial evidence to support the conviction beyond a reasonable doubt, it will not be disturbed on appeal. State v. Bouldin, 153 Mont. 276, 456 P.2d 830, 26 St.Rep. 403; State v. Lagge, 143 Mont. 289, 388 P.2d 792.

Reviewing the evidence in the light of the foregoing principle, we find testimony from Kathy Best that defendant gave her 1½ small orange pills that she thought were "acid", i. e. lysergic acid diethylamide or LSD. That she took the half pill and Cynthia Roth took the whole pill. Cynthia corroborates her ingestion of the whole pill. Shortly thereafter Kathy experienced effects from the pill which she described as "everything was moving, and time speeded up". Kathy indicated "You would only be there for about a minute or two, and it seemed like you had been there for hours". Kathy also described its effects as "you are constantly talking and everything" and that she felt "high" and "I don't know, you just feel different." Kathy experienced the effects for several hours with the effects pretty well worn off by the following morning.

Cynthia experienced a more pronounced reaction from the pill. She described herself as feeling "very high", "seeing images", and "time was very drawn out". She testified that in her

imagery "Colors were very intense and patterns, and like I could wave my hand in front of me and see the vibration, and when I would walk, I could turn around and see my body and vibration were catching up" Cynthia "wanted to just run and scream and yell" and sounds were intensified. There were bugs on the windshield of the car and she thought it was raining out. Her pupils were extremely dilated. Her reaction to the pill continued until the wee hours of the morning.

Both girls hallucinated in the presence of their respective parents. Urban Roth, Cynthia's father, described his daughter as being completely disoriented, wandering off in her conversation, laughing, crying, and uncontrollably shaking. He gave her a tranquilizer furnished by Dr. Best.

Dr. Best testified that in his medical opinion the pills taken by the two girls were "lysergic acid or one of the hallucinatory drugs, possibly a combination of that and amphetamine", but without a chemical analysis he could not be certain of the derivative of the drug. He further stated that in his opinion the pill the girls took had lysergic acid in it or another hallucinatory drug, such as STP. Dr. Best's opinion was based solely on his observations and history. He indicated that he agreed with a statement read to him by defendant's counsel on cross-examination to the effect that "Identification of a suspected article as being or containing LSD would seem to require expert chemical or scientific analysis and expert testimony based thereon." According to Dr Best, Kathy had showed no symptoms of having taken any drug prior to the date of taking the half part of the orange pill. In his opinion Kathy's symptoms were caused by drug and not phychosis.

Defendant did not testify. His defense was based on the testimony of Dr. Charles R. DeWitt, a clinical psychologist, but not a medical doctor. Dr. DeWitt was employed as Chief Psychologist at the Warm Springs State Hospital. He described the reactions of persons who had taken LSD and indicated these were determined largely by clinical observation. He indicated

that some other chemicals could produce these reactions, that "flashbacks" from previous dosages could occur, and that these symptoms could be produced without drugs by the physical and mental condition of a person. He indicated that almost any type, size, or color pill could contain an hallucinogenic drug. He expressed considerable doubt as to whether STP or LSD was contained in the pills involved in the instant case.

In our view the conflicting testimony was evaluated by the jury which placed more weight and credence on the testimony of the state's witnesses and by its verdict determined that the charge against the defendant had been proven beyond a reasonable doubt. As this Court has previously held in State v. Doe, 146 Mont. 501, 409 P.2d 439, citing from State v. Lagge, supra:

"It is not for us, an appellate court, to determine the credibility of a witness or to evaluate the testimony, rather, that is a function for a jury and their decision will not be disturbed by us without a clear showing in the record that either perjury, impeachment or extenuating circumstances were clearly present."

Here the only substantial question was whether the drug given by defendant to Kathy Best was one of the prohibited drugs in the Dangerous Drug Act. The state produced substantial credible evidence which if believed by the jury proved the drug to be LSD, a hallucinogenic prohibited drug, or a derivative thereof, or an amphetamine, a stimulant prohibited drug, or one of its derivatives The jury by its verdict determined the issue. While the testimony of defendant's witness indicated it might have been a nonprohibited drug, or the result of a "flashback" or a psychosis, the jury by its verdict held, in effect, that this testimony did not create a reasonable doubt in the minds of the jurors on this issue.

The jury was properly instructed that absolute certainty of proof was not required as it is rarely possible to produce it, but only moral certainty was required, or that degree of proof which produces conviction in an unprejudiced mind. It was also in-

structed that the defendant must be proven guilty beyond a reasonable doubt which was defined as ''a doubt for which there exists in the minds of the Jurors a reason, and not a doubt arising from mere caprice or groundless conjecture.'' The jury was likewise instructed on the effect of expert opinion evidence and was told to give it ''the weight to which you find it to be entitled'' and that ''You may disregard any such opinion if you find it to be unreasonable.'' Thus the jury was entitled, if it so determined, to give more weight to the expert opinion testimony of Dr. Best that LSD or amphetamine was contained in the pills based upon his personal observation and the history given him. The jury was likewise entitled, if it so determined, to discount the testimony of defendant's expert witness on which defendant's case was based. We observe that the opinion evidence of defendant's expert was based on the difficulty of identification of the specific drug without chemical analysis and indicated other possibilities that would account for the strange behavior of the girls following ingestion of the pills. The jury was entitled to discount these other possibilities as baseless in the instant case under the evidence produced by the state. As there was substantial credible evidence to support the jury verdict here, we will not disturb such verdict.

Defendant's final issue for review concerns two jury instructions, one of which was given over his objection and one of which was refused.

State's Instruction No. 24 was given as Court's Instruction No. 26:

''The term 'Dangerous Drug' means any depressant, stimulant, hallucinogenic or narcotic drug.''

Defendant's objection was that there was no evidence of the existence of a narcotic or depressant. While this may be true, this is a direct quote from the statute, section 54-129(g), on which the state was entitled to an instruction. Even adopting defendant's position, it was harmless error in any event.

Defendant's offered Instruction No. 18 instructed that the

term "dangerous drug" included the specific drugs named in the statute "and none others". The court modified the instruction by striking the words "and none others" giving the balance of the instruction as Court's Instruction No. 30. Upon appeal defendant argues that he was entitled to the instruction "so that the Jury would understand thoroughly that a conviction must be supported by identification of such specifically-named drugs, and those drugs alone."

The instruction as modified by striking the words "and none others" is taken directly from section 54-129. The statute does not include the words "and none others". Defendant is not entitled to add words to a statutory instruction that are not included in the statute. The court was correct in striking the offending words and giving the instruction in the language of the statute.

We have carefully examined all other contentions of the defendant contained in his briefs and oral argument and find them to be without merit and unnecessary to comment upon herein.

The verdict and judgment of the district court are affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES DALY, JOHN C. HARRISON and CASTLES, concur.