No. 12758

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

_____

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

WILLIAM ROBERT GLIDDEN,

Defendant and Appellant.

_____

Appeal from:  District Court of the Fourth Judicial District,
Honorable E. Gardner Brownlee, Judge presiding.

Counsel of Record:

For Appellant:

Daley and Sherlock, Kalispell, Montana
Patrick D. Sherlock argued, Kalispell, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
Carlan J. Kraft, Assistant Attorney General, argued,
Helena, Montana
Richard P. Heinz, County Attorney, argued, Polson,
Montana

_____

Submitted:  November 19, 1974

Decided:  DEC 3 0 1974

Filed:  DEC 3 0 1974

*Thomas J. Kearney*
_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant William Robert Glidden was convicted in the district court, Lake County, of the crime of forcible rape and he appeals from that conviction.

The issues are: (1) Whether the verdict was contrary to the evidence and section 94-4101, R.C.M. 1947? (2) Whether the district court erred in denying defendant's motion to dismiss at the close of the state's case in chief?

The state alleged appellant picked up the girl in question in the city of Polson on the afternoon of August 1, 1973, when she was trying to hitch hike from town to a nearby ranch where she was living. The girl worked in town and on this particular day she had done some shopping after work and then tried to pick up a ride to the ranch some 12 miles west of Polson.

The girl testified she accepted the ride when appellant told her he was going past the area where she lived. As soon as appellant got the girl into his truck he speeded up to 60 miles per hour down the highway and within a few minutes grabbed the girl on the breast and propositioned her. She testified she was terrified and asked to be let out of the truck, but that he continued down the road at a high rate of speed. Several miles out of Polson he pulled off the road and stopped in a secluded area. During this period the girl attempted to get out of the truck but was physically restrained by appellant until the truck came to a stop. He then proceeded to drag the struggling girl across the driver's seat from the passenger's side and out the door of the driver's side. He then informed her of his intentions and said: "If you struggle it will be harder for you because I won't let you go until I have finished."

Appellant makes no denial that he consummated a sexual act with the girl. He alleges that she freely acquiesced. She

- 2 -

denied such acquiescence and testified as to her fears:

"Q. Were you in fear of him through the course of these actions you have described? A. Yes, He was much bigger than I am and even though I am a tall woman, I am not as strong as a man and I could not fight him any more than I originally started to. Every time I continued to fight him, he would only hurt me more and I was very afraid for my life."

Immediately after the rape the girl escaped from defendant and hid in some grass and bushes until he left the area. She then got back to the ranch with the help of some people who came along and took her home. Immediately upon her arrival at the ranch the girl reported what happened and the sheriff was sent to investigate. She gave a full description of the man to the sheriff's deputies, including the fact appellant had a beard. In addition, she described the truck as being red and described the interior. The day after the incident she went to the sheriff's office where she picked out, from ten photographs, a picture of appellant, even though it was a picture of him without a beard. Several weeks later she identified appellant at a preliminary hearing, even though he had shaved off his beard.

After picking out appellant's picture at the sheriff's office, she was taken to his residence to see whether she could identify him in person, but no one answered the door when the sheriff's deputy knocked.

Appellant testified in his own defense at trial. He admitted the fact of intercourse with the girl, but denied that he raped her. He admitted being at home when the sheriff's car came to his house the day after the incident and that he saw the girl in the car. He admitted being scared then and at that time he shaved off his beard and had some friends take him to Coeur d' Alene, Idaho, to seek his brother's advice. He was notified by his wife that a warrant was out for his arrest and he returned to Montana voluntarily.

- 3 -

During the trial a witness appeared for appellant and testified that he had had intercourse with the girl. When corss-examined the witness' fabricated story blew up, leading to a perjury charge against that witness following the trial. Obviously the introduction of such testimony was not beneficial to appellant's cause.

In a criminal prosecution the weight of the evidence and credibility of the witness is a matter exclusively within the province of the jury and should not be disturbed by a court of appeal. State v. Doe, 146 Mont. 501, 409 P.2d 439; State v. Lagge, 143 Mont. 289, 388 P.2d 792; State v. Pankow, 134 Mont. 519, 333 P.2d 1017. In one of this Court's early cases, State v. Gleim, 17 Mont. 17, 29, 41 P. 998, this Court held:

> "' * * * The jury being the sole judges of the weight to be given to the testimony, the court should not tell them what particular weight to give to any portion of the testimony.'"

In a recent opinion, State v. Stoddard, 147 Mont. 402, 408, 412 P.2d 827, this Court commented:

> "First, we should note that this court is not a trier of fact * * *. In view of the presumption of innocence at the trial, the jury must have been instructed to that effect, but on appeal after conviction the rule changes. Then, if the record shows any substantial evidence to support the judgment, the presumption is in favor of such judgment."

The instant case being a rape case there arises a peculiar problem as to the burden of proof and the sufficiency of the evidence. The typical situation in such cases is that the only witnesses to the event are the parties. While it is true that a conviction of rape depends upon the credibility of the primary witnesses, the accuser and the accused, it has been a long settled rule in rape cases, as stated in State v. Moe, 68 Mont. 552, 553, 219 P. 830:

> " * * * a conviction for rape may be sustained by the

> uncorroborated testimony of the prosecutrix
> [Citing cases], unless her testimony is so
> inherently improbable or is so nullified by
> material self-contradictions as to be unworthy
> of belief."

See also: State v. Bouldin, 153 Mont. 276, 456 P.2d 830.

Here, the evidence was sufficient for conviction. Appellant's argument that the girl did not fight or that she gave consent is without merit. There is no clear rule as to how much resistance is required of a woman in order to prove her lack of consent to sexual intercourse with a man who intends to rape her, apparently at all costs. The law does not put her life into even greater jeopardy than it is already in. When a woman is dealing with a man bent on rape, how can she know how much resistance she can give without provoking him into killing her? Continuous resistance to an attempted rape is not required. This Court in State v. Metcalf, 153 Mont. 369, 376, 457 P.2d 453 (1969), held:

> "The defendant does not, however, have the right
> to an instruction which, to the exclusion of
> some elements of a crime, would mislead the jury
> to believe that constant physical resistance
> which required force to overcome was an essential
> element."

Here, there are no disputed legal issues involved, only questions of fact. A prima facie case was presented to the court. Appellant admitted having sexual intercourse with the prosecutrix and the jury chose to believe her testimony.

The conviction is affirmed.

_____ John Conway Harrison
                              Justice

We concur:

_____
  Chief Justice

_____

_____

_____
  Justices

- 5 -