No. 12821

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

THE STATE OF MONTANA,

                Plaintiff and Respondent,

-vs-

DEAN WILLIAM BALLEW,

                Defendant and Appellant.

---

Appeal from:  District Court of the Thirteenth Judicial District,
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

    For Appellant:

        John L. Adams, Jr. argued, Billings, Montana

    For Respondent:

        Hon. Robert L. Woodahl, Attorney General, Helena,
        Montana
        Thomas A. Budewitz, Assistant Attorney General, argued,
        Helena, Montana
        Harold F. Hanser, County Attorney, Billings, Montana
        Charles A. Bradley, Deputy County Attorney, argued,
        Billings, Montana

---

Submitted:  January 17, 1975

Decided:  FEB 25 1975

Filed:  FEB 25 1975

*Thomas J. Kearney*
               Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This is an appeal from a conviction of deviate sexual conduct, entered in the district court, Yellowstone County. Defendant raises five issues on appeal:

(1) Is section 94-5-505, R.C.M. 1947, unconstitutionally vague, indefinite and uncertain?

(2) Did the district court err by giving an incorrect instruction on the statutory elements of the offense?

(3) Did the district court err in refusing an instruction on the necessity of viewing the complaining witness' testimony with caution?

(4) Did the district court err in refusing defendant's proposed instruction on impeachment of witnesses?

(5) Does the evidence support the verdict?

The deviate sexual conduct allegedly occurred on the evening of February 15, 1974, in Billings, Montana. The prosecution and the defense each presented a different version of the events of that evening.

The complaining witness (hereinafter referred to as the "victim"), a sixteen-year-old boy, testified he was walking home from a friend's house shortly after 10:00 p.m. on the day in question. He crossed the parking lot of a store and continued across a nearby field. He was then accosted by defendant, who drove up to him in a private automobile, accompanied by two young ladies. The conversation which ensued, outside the hearing of the women, was to the effect that defendant suspected the victim's involvement in burglaries of the store which the victim had just passed. Although the victim had never seen the defendant before, he entered the car with him, thinking he was a security guard for the store.

One of the women drove the car back to the store parking

lot, where the two women got out and left in another vehicle. Defendant then drove to a remote part of the city and, after threatening to get mean if the victim did not cooperate, he performed acts of oral and anal intercourse on the victim. He then return^ed the victim to a point near where he had picked him up and let him out of the car. The victim went to the nearest public phone amd called the police. Defendant was arrested the following afternoon, after the victim had identified him and the vehicle which he was driving the previous night.

Defendant testified he worked as a stock boy in a store in Billings, and that he had been approached by the victim, who requested a ride home after the store closed. Defendant agreed and when he later saw the victim in the parking lot, he assumed that he still needed a ride. After some difficulty in locating him, he approached the victim and offered to drive him home. After dropping the women off at their car, he then took the victim directly to the location indicated by the victim, and let him out of the car. He denied that he ever made sexual advances toward the victim.

The only other evidence presented was certain physical evidence tending to substantiate the victim's version of the events, and certain character evidence favoring defendant. The physical evidence included laboratory analysis of semen stains and hairs found on the victims clothing and clothing taken from defendant when he was arrested. The character evidence showed that the defendant had not molested other youngsters although he had opportunity to do so while baby-sitting young boys. Defendant did admit to having engaged in homosexual activities for over five years, but indicated he had discontinued this practice more than six months before this incident.

Defendant was charged with violation of section 94-5-505,

R.C.M. 1947, which provides, in pertinent part:

> "(1)  A person who knowingly engages in
> deviate sexual relations, or who causes another
> to engage in deviate sexual relations commits
> the offense of deviate sexual conduct.
>
> " * * *
>
> "(3)  A person convicted of deviate sexual
> conduct without consent shall be imprisoned
> * * *".

Relying primarily on Harris v. State, (Alas. 1969), 457 P.2d 638, defendant urges the quoted statute is unconstitutionally vague and ambiguous.  In Harris, the Alaska court was considering a statute which employed the term "crime against nature".  That court held, citing Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888, that the term was so vague it failed to give fair warning of the acts prohibited and therefore it worked a deprivation of due process in violation of the Fourteenth Amendment to the United States Constitution.

Defendant alleges the Montana statute does not sufficiently enunciate the prohibited conduct and, like the Alaska statute, it must therefore be held unconstitutional.  We disagree.

The attack on the constitutionality of the statute was raised for the first time in defendant's supplemental appellate brief.  However, since this is a criminal case, we will not content ourselves with disposing of the challenge on that basis alone.  See e.g. State v. Braden, 163 Mont. 124, 515 P.2d 692, 30 St.Rep. 961.  The allegation of vagueness is not supported by the statute itself when viewed in the context of Montana's criminal code.

Section 94-2-101, R.C.M. 1947, defines the terms used in the statute proscribing deviate sexual conduct.  The specificity of those definitions avoids a result similar to that reached in Harris, urged by defendant.  In pertinent part, those definitions provide:

> "(14)  'Deviate sexual relations' means sexual

contact or sexual intercourse between two (2)
persons of the same sex, or any form of sexual
intercourse with an animal.

" * * *

"(55)   'Sexual contact' means any touching of
the sexual or other intimate parts of the person of
another for the purpose of arousing or gratifying
the sexual desire of either party.

" * * *

"(56)   'Sexual intercourse' means penetration of
the vulva, anus or mouth of one person by the penis
of another person, or penetration of the vulva or
anus of one person by any body member of another
person or penetration of the vulva, or anus of one
person by any foreign instrument or object manipulated
by another person for the purpose of arousing or
gratifying the sexual desire of either party.  Any
penetration, however slight, is sufficient.

" * * *

"(68)   'Without consent' means:

"(a)   the victim is compelled to submit by force or
by threat of imminent death, bodily injury, or
kidnaping, to be inflicted on anyone * * *."

The text of these definitions is set forth completely

to show the specificity and absolute lack of vagueness in the

statutory formulation of the offense of deviate sexual conduct.

Defendant's second issue is also raised for the first

time on appeal.  He objects to the district court's instruction

informing the jury of the elements of the offense.  The challenged

portion of Instruction No. 15 reads:

"SECOND:  That the Defendant did so [performed
the act] without the consent of [the victim],
said consent having been overcome by threats or
putting in fear of his, [the victim's] safety."
[Bracketed words supplied or substituted.]

Defense raised no objection when this instruction was offered.

This, in itself, is sufficient to defeat defendant's arguments

on appeal.  See:  State v. Braden, 163 Mont. 124, 515 P.2d 692,

30 St.Rep. 961; Section 95-1910(d), R.C.M. 1947; Rule 2, M.R.App.

Civ.P.

However, apart from this procedural deficiency we can

find no prejudice resulting from the instruction. It is true that, in a vacuum, the instruction might be construed to include fear for safety other than in the sense of death, bodily injury or kidnapping. An instruction using the statutory language of section 94-2-101(68), R.C.M. 1947, would have been preferable.

However, under the facts of this case, we can find no other plausible construction for the language of the instruction. The threat made against the victim here clearly involved his physical well-being. If the jury had considered the meaning which defendant attaches to the instruction, it would have discarded it as unsupported by the evidence. Finding no prejudice, we find no reversible error.

Defendant next argues that the jury should have been instructed that the testimony of a complaining witness in a sex offense case should be viewed with caution, since the charge is easily made and difficult to disprove. The instruction which defendant proposed in the district court is almost identical to the one quoted in State v. Boe, 143 Mont. 141, 148, 388 P.2d 372. Similar instructions were presented in State v. Stevens, 119 Mont. 169, 172 P.2d 299; State v. Peterson, 102 Mont. 495, 59 P.2d 61; State v. Mihalovich, 69 Mont. 579, 222 P. 695; State v. Gaimos, 53 Mont. 118, 162 P. 596; and State v. Keeler, 52 Mont. 205, 156 P. 1080. These cases recognized that such instructions may be given but that, at least in these cases, it was not reversible error to refuse to do so.

Given this authority in our own jurisdiction, we need not consider the California cases cited by defendant in support of his contention. Under the cases cited above, it is clear that refusal to give such an instruction will be error only when some specific cause is shown for distrusting the testimony of the

complaining witness. Such causes might include manifest malice, desire for revenge, or an absence of corroborating evidence tending to support the facts testified to by the complaining witness. Apart from the bald assertion that defendant was framed, we find no facts in the instant record which suggest the necessity of such an instruction. Defendant's unsubstantiated allegation is insufficient to make the refusal of the instruction reversible error.

Defendant's assertion that the district court erred in refusing to give his proposed instruction on the weight which should be accorded to testimony of impeached witnesses is equally unimpressive. The omnibus instruction which was given to the jury covered all the material points raised by defendant's proposed instruction. The district court alluded to that fact at the time it refused the offered instruction. Under such circumstances, we have previously recognized that the refusal of a similar instruction was not error, even though the language applied more directly to the factual situation presented by the case. State v. Black, 163 Mont. 302, 516 P.2d 1163, 30 St.Rep. 1106. That reasoning is equally applicable here, particularly when the scarcity of impeachment evidence is considered.

Defendant's final argument is that the evidence does not support the verdict. Without further detailing the facts which were before the jury, we have reviewed the entire record and find ample, credible evidence upon which the verdict could be grounded.

Accordingly, we affirm the conviction.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

- 7 -