Nos. 80-142 & 80-323

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

THE STATE OF MONTANA,

Plaintiff and Respondent,

vs.                                                   No. 80-142

EDWARD DENNIS HIGLEY,

Defendant and Appellant,

Appeal from: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin, The Honorable
Joseph B. Gary, Judge presiding.

THE STATE OF MONTANA,

Relator,

vs.                                                   No. 80-323

THE DISTRICT COURT OF THE
THIRD JUDICIAL DISTRICT et al.,

Respondents.

ORIGINAL PROCEEDING

Counsel of Record:

For Appellant:

Larry W. Moran and Michael M. Nash, Bozeman, Montana
Michael M. Nash argued, Bozeman, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Mark Murphy argued, Asst. Atty. General, Helena,
Montana
Donald E. White, County Attorney, Bozeman, Montana
Michael Lilly argued, Deputy County Atty., Bozeman,
Montana

Submitted:  November 25, 1980

Decided:  DEC 17 1980

Filed: DEC 17 1980

THOMAS J KEARNEY

Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant was convicted in District Court, Gallatin County, of kidnapping and sexual intercourse without consent. He was sentenced to ten years in the State Prison on each count, to be served concurrently. The defendant appealed the conviction and while the appeal was pending, he applied to the district judge, Powell County, for bail pending appeal. The motion was granted and defendant was released from prison. The Gallatin County Attorney applied to this Court for a writ of supervisory control, asking this Court to find that the district judge, Powell County, was without jurisdiction to admit defendant to bail. We consolidated the appeal and the application for the writ. We affirm the conviction and deny the State's application for the writ, finding the issue of bail pending appeal to be moot by reason of our decision to affirm the conviction.

On June 29, 1979, at about 1:30 a.m., Lynette Church left a bar in downtown Bozeman and began walking toward her home. Near the hospital on North Willson, a man jumped from behind a hedge and grabbed her, knocking off her glasses. She screamed, and he clapped a hand over her mouth. She was forced into his car and he drove to a secluded spot in Bridger Canyon. During the drive, and at the stopping point in the Canyon, the defendant forced her to engage in various acts of vaginal and oral sex. During the activity, Linnie noticed a wallet lying on the ground. She slipped it under her coat, which defendant had ordered her to place on the ground before engaging in intercourse. She eventually managed to get the wallet into her pocket.

At about 3:00 a.m., the defendant dropped Lynette off in downtown Bozeman and she walked home. At home she called the Bozeman Help Center and later went to the hospital with members of the Help Center's Rape Outreach Team.

Prior to going to the hospital, Linnie examined the wallet and found a driver's license with a picture. She determined that

- 2 -

this was a picture of the man who had attacked her. At the hospital she gave the wallet to Ron Green of the Bozeman police department. He showed her the wallet photograph and Linnie positively identified the individual in the picture as her assailant. Pursuant to a search warrant, the Bozeman detectives searched the defendant's car and found a portion of a fingernail, and pubic hair belonging to the victim.

Defendant was arrested on Friday, June 29, 1979, and appeared before the Justice of the Peace on that day. On Monday, July 2, defendant's attorney requested that a preliminary examination be held that afternoon. The State objected and no examination was held. The defendant made no further request, and was released on bond on July 3, 1979. An information was filed in District Court on July 10, 1979, and defendant filed a motion to quash. The motion was denied.

Trial commenced on October 10, 1979, and defendant was found guilty on October 15. The defendant was sentenced on November 9, 1979, following an interview between the judge and the victim as to her feelings about the appropriate sentence. The defendant was not designated "dangerous" or "non-dangerous" until four months later, following the filing of a psychiatric report by the Department of Institutions.

Defendant raises thirteen issues on appeal:

1. Is a defendant entitled to a preliminary examination if an information has not been filed within ten days after his arrest?

2. Is a pretrial photographic identification by the victim, utilizing only one photograph, so suggestive as to require suppression of any in-court identification?

3. Is the defendant denied his constitutional right to confront his witnesses, by operation of section 45-5-503(5), MCA, precluding evidence of the victim's sexual conduct, and Rule 608, Mont.R.Evid., precluding testimony as to specific instances of a

witness' conduct and certain cross-examination?

4. May the District Court allow introduction of evidence at trial which was not specified in the order drawn up following an omnibus hearing?

5. Was the defendant entitled to a cautionary Smith-type instruction, because the substantive facts were in question at trial and there was scanty medical evidence of intercourse?

6. Is defendant entitled to an instruction as to the necessity that the victim manifestly objected to the act of intercourse?

7. Does the evidence support the verdict?

8. Is the district judge permitted to interview the victim on the issue of sentencing without allowing the defendant to cross-examine the victim?

9. Did the district judge err in denying defendant a new trial, when defendant was able, after trial, to produce evidence of mental disease or defect?

10. Was defendant denied his due process rights by the use of incorrect information at sentencing?

11. Does defendant have a right to be present at post-conviction proceedings?

12. Was the failure to designate defendant as "dangerous" or "non-dangerous" for four months a violation of defendant's right against cruel and unusual punishment and a violation of the prohibition against uncertain or indefinite sentencing?

13. Was defendant denied his right to a transcript on appeal?

Defendant was arrested on Friday, June 29, 1979, and made an initial appearance before the Justice of the Peace that day. On Monday, July 2, his attorney contacted justice court and requested that a preliminary examination be held that afternoon. The county attorney received oral notice that a hearing would be held that day. The State objected to the hearing on such

- 4 -

short notice and it was not not held. Defendant made no further request and he was released on bond on July 3. The county attorney filed an information in District Court on July 10.

Defendant contends that he has a right to a preliminary exam if he has not waived it or if the District Court has not previously granted leave to file direct. The right to a preliminary examination arises under section 46-7-103, MCA:

> Preliminary hearing in justice's court. After the initial appearance a justice's court shall, within a reasonable time, hold a preliminary examination unless the defendant waives a preliminary examination, the district court has granted leave to file an information, an indictment has been returned, or the case is triable in justice's court. (Emphasis added.)

The purpose of the preliminary hearing is to determine whether there is probable cause to believe that a felony has been committed. Section 46-10-101, MCA. The probable cause determination may be made in a preliminary examination in justice court, or it may be made by application to the District Court judge, presenting by affidavit such evidence as the judge may require. Section 46-11-201, MCA. The only requirement is that there is an independent judicial determination of probable cause and the defendant has no vested right to either procedure. Gerstein v. Pugh (1975), 420 U.S. 103, 120, 95 S.Ct. 854, 866, 43 L.Ed.2d 54, 69; State v. Dunn (1970), 155 Mont. 319, 325, 472 P.2d 288, 292.

Many states set forth precise time limits within which the State must hold the preliminary examination if the District Court has not granted leave to file an information. The federal statute provides:

> "Such examination shall be held within a reasonable time but in any event not later than 10 days following the initial appearance if the defendant is in custody and no later than 20 days if he is not in custody, provided, however, that the preliminary examination shall not be held if the defendant is indicted or if an information against the defendant is filed in district court. . ." (Emphasis added.) 18 U.S.C. Fed.R.Crim. P. 5(c).

- 5 -

As can be seen under the federal statute, then, any time beyond 20 days is viewed as unreasonable if the defendant is not in custody. In the instant case, defendant was out on bond and waited only 10 days between his initial appearance and the determination of probable cause.

The previous federal rule required a hearing in a reasonable time only. In James v. Lawrence (D.C. Cir. 1949), 176 F.2d 18, 20, the court found that 18 days was not unreasonable. There the State asked for a continuance and the court noted that it must consider time for the government to prepare, in computing reasonable time. Alaska's statute likewise requires a hearing within a reasonable time. In Martinez v. State (Alas.1967), 423 P.2d 700, the court discussed the impracticality of requiring a hearing within a specific time, and noted that what constitutes a reasonable time must be determined by the facts of the case. If the charge is serious, both sides need time to prepare; whether the charged is out on bond is another factor which must be considered, because the purpose of the statute is to protect the accused from unwarranted incarceration. Martinez, supra, 423 P.2d at 710-711. The Martinez court found that 16 days was not an unreasonable amount of time.

We find that a 10-day delay in determining probable cause was not unreasonable. The defendant requested the exam but the State was given only a few hours notice. On request of the State, that hearing was vacated. Defendant was released on bond the next day. He did not request another setting and leave to file was granted less than a week later.

Defendant argues that failure to hold a preliminary examination in this case may have allowed an important witness to get away without ever being interviewed. But as this Court indicated in State v. Dunn, supra, 155 Mont. at 326, 472 P.2d at 293, the preliminary hearing is not meant to be a "fishing expedition" for all possible evidence, and if probable cause is established to

- 6 -

the satisfaction of the district judge by the county attorney's affidavit, the defendant has little reason to complain. In this case, the district judge found probable cause on the strength of the information presented to him by affidavit. Based on the amount of evidence presented at trial, we can find no error in the State's failing to hold a preliminary examination. There was substantial evidence to support a conviction, and the defendant, who relied on the defense of alibi, admitted that this witness had no relevance to his defense of alibi and was not listed as an alibi witness. Under the circumstances it is doubtful that a preliminary examination would have secured any advantage to the defendant. See State v. Johnson (1967), 149 Mont. 173, 178, 424 P.2d 728, 731.

Appellant next contends that the pretrial identification of the defendant by one photo was so suggestive that Ms. Church should not have been permitted to make an in-court identification. He argues that all evidence obtained after that first identification is tainted by the illegality of the identification.

The United States Supreme Court and this Court have faced the problem of suggestive identification, and have condemned the procedure of showing the victim only one photo. This process may be so suggestive and so conducive to mistaken identification as to deny due process. Stovall v. Denno (1967), 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206; Neil v. Briggers (1972), 409 U.S. 188, 198, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411. However, not all suggestive identifications have resulted in a finding of denial of due process.

The Montana Court, in State v. Lara (1978), ____Mont.____, 587 P.2d 930, 35 St.Rep. 1699, enunciated its two-pronged test to determine whether or not the identification should be suppressed:

> "First, was the identification procedure imper-
> missibily suggestive; and, second, if so, did it

under the totality of the circumstances have
such a tendency to give rise to a substantial
likelihood of irreparable misidentification. . ."
State v. Lara, supra, ___ Mont. at___, 587 P.2d
at 932, 35 St.Rep. at 1702.

Undoubtedly the procedure here was very suggestive. Ms.
Church testified that she had made a previous identification of
the defendant by viewing the photo in the wallet which she had
found at the scene of the crime. The police were not present at
that time. At the hospital she gave the police the wallet, and at
that point the investigator showed her the one picture in the
wallet, asking if that was a picture of her assailant.

But we find that the circumstances here point to suf-
ficient reliability in the identification to satisfy due process.
In Neil, supra, the Court set forth some of the factors to be con-
sidered in judging reliability:

"We turn, then, to the central question, whether
under the 'totality of the circumstances' the
identification was reliable even though the
confrontation procedure was suggestive. As
indicated by our cases, the factors to be con-
sidered in evaluating the likelihood of misiden-
tification include the opportunity of the
witness to view the criminal at the time of the
crime, the witness' degree of attention, the
accuracy of the witness' prior description of
the criminal, the level of certainty
demonstrated by the witness at the
confrontation, and the length of time between
the crime and the confrontation." Neil, supra,
409 U.S. at 199-200, 93 S.Ct. at 382, 34 L.Ed.2d
at 411.

Here the victim spent about one and one-half hours with
defendant, both in his car and in Bridger Canyon, and she was
forced to engage in intimate physical activity with him. At two
different times, the interior car light came on, giving the vic-
tim an opportunity to view her assailant.

Additionally, although the victim's prior description of
defendant was limited in detail, her description was accurate.
She told the police that her assailant had blonde hair, was
fairly heavy set and was very light skinned. She also stated
that her assailant's hair was shorter at the time of the offense
than at the time the photograph was taken, and that she did not

- 8 -

remember that her assailant had a mustache as was shown in the photo. In fact, the defendant's hair was shorter at the time of his arrest and he did not have a mustache. His hair was blonde and he had a light complexion.

Little time elapsed between the victim's release and the photographic identification. The detective testified that she demonstrated a very high degree of certainty when identifying defendant from the photograph.

Under the circumstances of this case, we find that there was very little likelihood of misidentification. Thus, the district judge properly denied the motion to suppress the identification.

Appellant next challenges section 45-5-503(5), MCA, and Rule 608, Mont.R.Evid., as unnecessarily restricting a defendant's right to cross-examine, and to introduce relevant testimony. He alleges that the result of the use of these statutes is to deny the defendant his constitutional right to confront witnesses.

Section 45-5-503(5) prevents introduction of evidence of the victim's sexual conduct and provides in part:

> "No evidence concerning the sexual conduct of
> the victim is admissible in prosecutions under
> this section . . ."

The Annotator's notes to that section indicate that the purpose of the rule is "to prevent the trial of the charge against the defendant [sic] being converted into a trial of the victim." Annotator's Notes, MONTCLIRC's Montana Criminal Code Annotated, 1980 rev.ed.

Rule 608(b), Mont.R.Evid., provides in pertinent part:

> "Specific instances of conduct. Specific
> instances of the conduct of a witness, for the
> purpose of attacking or supporting his
> credibility, may not be proved by extrinsic
> evidence. They may, however, in the discretion
> of the court, if probative of truthfulness or
> untruthfulness, be inquired into on cross-
> examination of the witness (1) concerning his
> character for truthfulness or untruthfulness . . ."

Based on these provisions the State obtained an order in

limine to prevent defendant from calling Mrs. Sorenson, Linnie's landlady, who was expected to testify that Linnie laughed after being asked by her roommate: "Where are all of Bozeman's rapists? Linnie needs to be raped again." Appellant's position is that by being precluded from bringing in this witness the defendant was denied important testimony as to the victim's views on sexual matters. He also alleges error in the restrictions which the judge imposed on his cross-examination of the victim concerning her jacket which had inscribed on it, "Liquor in the front, and poker in the back."

The Sixth Amendment guarantees a criminal the right to testimony of witnesses in his favor. Washington v. Texas (1967), 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019, 1023. However, it does not guarantee him the right to any and all witnesses, regardless of their competency or knowledge. There is the competing interest of the fairness and reliability of the trial. The United States Supreme Court expressed this consideration in Chambers v. Mississippi (1972), 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297, 313:

> "In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence."

In limiting the right to confront and cross-examine, the rules in question must be scrutinized to determine whether they are arbitrary or whether they serve a legitimate competing interest. Chambers, supra, 410 U.S. at 295, 93 S.Ct. at 1046, 35 L.Ed.2d at 309.

We find that these rules limiting inquiry into sexual conduct of the victim are essential to preserve the integrity of the trial and to prevent it from becoming a trial of the victim. The Commission Comments, Rule 405(b), M.R.Evid., sets out the justification for keeping out evidence of specific acts of conduct:

> "This method of proof is the most persuasive of the three contained in the rule, and is also the

- 10 -

most likely 'to arouse undue prejudice, to con-
fuse and distract, to engender time-consuming
side issues and to create risk of unfair
surprise.' McCormick, Handbook of the Law of
Evidence 443 (2d ed. 1972). As a result of the
effect of this method of proof, it is generally
restricted to situations where character is in
issue, when such proof is central to the outcome
of the case." Commission Comments, Rule 405(b),
Mont.R.Evid.

The victim's character is not in issue in a case such as
this. Thus the potentially damaging evidence of specific acts
and prior conduct should be kept from the jury. We find no
denial of defendant's rights in this limitation nor do we find
that the judge improperly limited cross-examination as to the
victim's sexual views as evidenced by the quote on her jacket.
Rule 608(b), M.R.Evid., provides that the judge may allow inquiry
into specific acts on cross-examination, if such acts are proba-
tive of the truthfulness or untruthfulness of the witness. It is
doubtful that testimony concerning the victim's sexual views
comes within this rule at all, and it is clearly within the
judge's discretion to exclude this evidence if it is irrelevant
or too prejudicial. See Commission Comments, Rule 608(b),
M.R.Evid. In addition to being prejudicial, this kind of evidence
has little if any probative value. Thus, we find no merit in
defendant's argument, and find that the district judge properly
kept this evidence from the jury.

Appellant next contends that the district judge's denial
of his motion to suppress two reports from the Montana Criminal
Investigation Lab constitutes reversible error. He claims preju-
dicial surprise because these reports were not contained in the
"Omnibus Hearing Order."

Pursuant to local Rule 10A "Criminal Omnibus Hearing," the
district judge scheduled an omnibus hearing for September 25,
1979, a few weeks before trial. At that time the State made
available to the defense a report from the Montana Criminal
Investigation Lab. The day before trial the State notified
defendant that two additional reports had just been made

available by the lab. The following day, at trial, the State called Arnold Melnikoff, Bureau Chief of the Lab to testify. At that time defense counsel moved to suppress the evidence in reports two and three. The district judge denied the motion, but granted a continuance.

Appellant contends that the State's failure to include these two tests in the omnibus order requires their suppression because of a notice problem inherent in violating an omnibus order. In State of Montana v. District Court, (1979), ____Mont. ____, 590 P.2d 1104, 1109, 36 St.Rep. 161, 166- 167, this Court directed the District Courts to adopt an omnibus hearing procedure in order to "schedule, resolve and determine pretrial motions, applications and requests, including the calendaring and scheduling of the trial."

Pursuant to this directive, the Eighteenth Judicial District adopted Rule 10A. The omnibus hearing requires the court to "(2) See whether discovery has been complete and if not, make orders appropriate to expedite its completion"; and further that "(7) any and all issues should be raised . . ."

These rules are clearly meant to expedite and simplify the trial of a criminal case by getting all parties together on the contested issues and to facilitate discovery problems. The quoted sections, supra, do not appear to be aimed at setting an absolute deadline on discovery, but rather serve to implement the general discovery procedures outlined in section 46-15-301 et seq. MCA. Part 3 of Section 46-15-302 sets forth the obligation of continuing discovery:

> "(b) If, subsequent to compliance with an order issued pursuant to this rule and prior to or during trial, a party discovers additional material previously requested which is subject to discovery or inspection under this rule, he shall promptly notify the other party or his attorney or the court of the existence of the additional material. The court shall exclude any evidence not presented for inspection or copying pursuant to this rule unless good cause is shown for failure to comply. In the latter

case the opposing party is entitled to a recess or a continuance during which it may inspect or copy the evidence in the manner provided for in this subsection (3)."

The hearing on the motion to suppress this evidence indicates that the State was unaware of the results of the two tests until the day before trial. The State notified defense counsel at that time. The defendant took no action until the matter came up at trial. In a somewhat analagous situation, defendant in State v. McKenzie (1980), ____Mont.____, 608 P.2d 428, 37 St.Rep. 325, claimed that he demanded certain information from the county attorney which was not supplied to him. After trial began, defendant filed a motion to require the furnishing of this material. The Court found that there was a waiver of his right to object because of "defendant's failure to file a demand and motion for this material until after trial had begun." McKenzie, supra, ____Mont. at____, 608 P.2d at 443, 37 St.Rep. at 337.

Also as in McKenzie, defendant here claims surprise. We noted in that case that "the proper procedure where surprise is claimed . . . is to ask for a continuance so that defendant may prepare." McKenzie, supra, ____Mont. at ____, 608 P.2d at 441, 37 St.Rep. at 335.

Despite the fact that defendant knew of the new information prior to trial, he did not request a continuance. However, after the trial had commenced, the district judge granted a continuance overnight to allow defendant to prepare. It is within the judge's discretion to exclude the evidence, or to allow it in, subject to a continuance, based on his perceptions of the reason for nondisclosure and possibilities of prejudice. See Commission Comments, section 95-1803 (c), R.C.M. 1947, (now section 46-15-302(3), MCA). There is no evidence that the State purposely attempted to withhold evidence from the defendant. Additionally, the defendant by-passed his opportunity to have the trial continued when he found out about the

evidence the day before trial. Clearly the new evidence was very damaging to the defendant, but the district judge granted him an overnight continuance on learning of the evidence. We find no error to defendant in this procedure.

Appellant next argues that a cautionary instruction should have been given to the jury, because here the substantive facts were in question and there was scanty medical evidence of intercourse. The appellant is clearly asking this Court to devise new situations in which the following kind of instruction should be given:

> "You are instructed that no charge can be more easily made and none is more difficult to disprove than that of 'rape'. The jury is instructed that they must examine the
>
> complainant's testimony with caution and be satisfied with all aspects thereof beyond a reasonable doubt."

We have considered this instruction in several cases over the past few years and have sanctioned its use only in very limited circumstances. In the case of State v. Ballew (1975), 166 Mont. 270, 532 P.2d 407, we noted several situations in which this instruction is appropriate:

> "[I]t is clear that refusal to give such an instruction will be error only when some specific cause is shown for distrusting the testimony of the complaining witness. Such causes might include manifest malice, desire for revenge, or an absence of corroborating evidence tending to support the facts testified to by the complaining witness." State v. Ballew, supra, 166 Mont. at 276, 532 P.2d at 411.

Since the Ballew case was decided, this Court has narrowed the rule, finding that absence of corroboration alone is not sufficient reason for distrusting the testimony of the complaining witness. We hold that this instruction should be given only where "a showing of some type of personal enmity coupled with a lack of corroborative evidence on the disputed area of testimony may give rise to distrust." State v. Pecora (1980), ____Mont.____, ____P.2d____, 37 St.Rep. 1742, 1744. See also State v. Smith

- 14 -

(1980), ____Mont.____, 609 P.2d 696, 699, 37 St.Rep. 583, 587.

The situation in the present case would not necessitate this instruction under either Ballew or Pecora. There was no evidence of any desire for revenge, or any indication of any malice. In fact, the victim and the defendant testified to having never even seen each other prior to the night in question. Additionally, the record shows evidence corroborating the victim's testimony.

A neighbor heard a woman scream at approximately the same time that the victim testified to being abducted. A piece of the victim's glasses was found in the vicinity of the claimed abduction. A microscopically similar pubic hair of the victim's was found in defendant's car. A pubic hair microscopically similar to the victim's was found in defendant's pubic hairs. A hand print matching the victim's was found on the ground at the place where she testified to being forced to her hands and knees for a sexual act. A wallet was introduced into evidence which the victim testified to finding during the course of the sexual acts.

Based on this evidence and additional evidence in the record, we conclude that there was no basis for offering this instruction to the jury.

Appellant also claims error in the instructions given to the jury on "without consent," alleging that the instructions given shifted the burden to defendant of proving to the jury that the act was done with consent. He requested an instruction stating that some manifestation of lack of consent must be shown by the victim. We find that the jury instructions as a whole correctly instructed on consent and on the burden of proof.

Defendant offered the following instruction which was refused:

> "The court instructs the jury that it is the law
> of this State that a woman assaulted with an
> intent to commit rape upon her is not required to
> resist by all violent means within her power.
> The law requires only that she does not consent,
> and that she do all that her age, strength and

- 15 -

the attendant circumstances make it reasonable
for her to do in order to manifest her
opposition. She is not required to resist
beyond exhaustion of her strength or beyond the
point where the force used against her would make
further resistance useless or impossible."

The instruction which was given contained the same

language, but with one addition:

"You are instructed that continuous resistance
is not required to show that sexual intercourse
was without consent."

The judge further instructed the jury on the meaning of

"without consent," as found in section 45-5-501, MCA:

"You are instructed that an act is done 'without
consent' if the victim is compelled to submit by
force or threat of bodily injury or threat of
kidnapping, to be inflicted on anyone."

Appellant argues that these instructions do not adequately

instruct the jury on the necessity of the victim's showing active

resistance to the assailant, and requested the following instruction:

"To constitute carnal knowledge of a female
rape, [sic] the law requires something more than
mere absence of consent; there must be actual
resistance, or excuse, imcompatible with
consent, for its absence. Thus, generally,
resistance by the female is a necessary element
of the crime. In fact, the essential element of
nonconsent, or that the act be against the
woman's will, signifies, and is indicated by,
resistance by the female.

"Further, it must be real or genuine and active,
and not feigned, or passive, or perfunctory."

The District Court must insure defendant's right to

have instructions stating the law applicable to his case, State

v. Metcalf (1969), 153 Mont. 369, 376, 457 P.2d 453, 457,

but the court is not required to instruct on incorrect law, State

v. Caryl (1975), 168 Mont. 414, 425, 543 P.2d 389, 395, or on

every nuance of a defense theory. State v. Hamilton (1980), ____

Mont.____, 605 P.2d 1121, 1129, 37 St.Rep. 70, 78-79.

In determining whether or not the jury was properly

instructed as to the defense's theory, this Court will look at

the instructions as a whole. State v. Caryl, supra, 168 Mont. at

430, 543 P.2d at 398. Instruction No. 6 told the jury that defen-

dant was charged with "sexual intercourse without consent," and that "every material fact necessary to constitute such crime must be proved by the State by competent evidence, beyond a reasonable doubt." In being so instructed, the jury was adequately informed that the State had to prove "without consent" beyond a reasonable doubt; the burden was not shifted to the defendant to prove "consent."

Montana law does not require resistance to the point of the victim's putting her life in jeopardy, nor does the law require continuous resistance. State v. Glidden (1974), 165 Mont. 470, 474, 529 P.2d 1384, 1386. Here the jury was instructed that the victim need only resist to the extent that is reasonable, and that continued resistance is not necessary to show that the act was done without consent. This is a correct statement of the law and we find that the district judge properly refused defendant's proposed instructions.

The defendant next asserts that the evidence does not support the verdict, citing several items of inconsistent testimony. The defendant was in poor physical condition, and seemingly not able to sustain this rigorous sexual activity. The defendant's behavior after the crime was inconsistent with that of a person who had committed kidnapping and rape. He went to work and behaved normally. He did not bother to clean his vehicle, either inside or out. No sperm was found in the vagina nor on the clothing or other parts of the victim.

In reviewing the evidence, this Court will view it in the light most favorable to the prevailing party. State v. Caryl (1975), 168 Mont. 414, 422, 543 P.2d 389, 394. This Court is not the trier of fact and will not overturn the jury's verdict if there is substantial evidence to support it. State v. Stoddard (1966), 147 Mont. 402, 408, 412 P.2d 827, 831; State v. Kirkaldie (1978), ____Mont. ____, 587 P.2d 1298, 1305, 35 St.Rep. 1532, 1539.

In addition to the testimony of the complaining witness, there is substantial evidence in the record which corroborates her testimony. The testimony concerning the whereabouts of defendant and the victim placed them both at the scene of the abduction at about the same time. A woman in the neighborhood heard a scream at the time of the abduction. She also heard a flapping noise like someone wearing sandals. Ms. Church was wearing sandals at the time of the abduction.

The police found a piece of the victim's fingernail and the victim's pubic hair in defendant's car. One of defendant's head hairs was discovered on the victim's blouse, and a pubic hair microscopically similar to the victim's was found in defendant's pubic hair combings. The victim herself found the defendant's wallet on the ground at the scene of the rape, and it contained a picture of the defendant. She positively identified her assailant from the wallet photo shortly after her release, and later identified him in Court.

We will not overturn the verdict of the jury, based as it is on substantial credible evidence.

Prior to sentencing, the district judge conducted an in-chambers interview with the victim in order to determine her feelings as to an appropriate sentence. The defendant was not present. Both the State and defense counsel were denied any cross-examination. Defense counsel objected to the interview and contends that this was a denial of defendant's right to confront and cross-examine.

The United States Supreme Court has found no violation of due process rights in denying confrontation and cross-examination of witnesses in a sentencing hearing, Williams v. New York (1949), 337 U.S. 241, 250- 251, 69 S.Ct. 1079, 1085, 93 L.Ed 1337, 1344, and this Court in State v. Orsborn (1976), 170 Mont. 480, 485, 555 P.2d 509, 512, noted that "under section 95-2205 (now 46-18-113, MCA), the right of cross-examination in a presen-

tencing hearing is a discretionary matter with the trial court."
The Orsborn court was concerned with the possible use of inaccurate information, and the effect that a sentencing decision, based on misinformation, has on the due process rights of the defendant. In Orsborn, the court found that despite a denial of cross-examination, there were sufficient safeguards, under the circumstances, to prevent a violation of defendant's rights. The defendant was present at the hearing, the judge told the defendant the facts that he was relying on, and he gave the defendant an opportunity to refute the information. State v. Orsborn, supra, 170 Mont. at 485-86, 555 P.2d at 512, 513.

The situation in the instant case does not present the same protections to defendant's rights. The interview was conducted on the district judge's own initiative and was held in chambers without the defendant present. No cross-examination was allowed, nor was any opportunity given to the absent defendant to refute the information. We find this procedure to violate defendant's right to be sentenced under circumstances free from misinformation.

In so holding, we have not determined that interviewing the victim of the crime is per se violative of a defendant's rights. We are reaffirming our holding in Orsborn that a sentencing judge may utilize information from sources other than the testimony of witnesses in open court, if there is adequate protection of the defendant's rights. But in this case, we find an abuse of discretion in the manner in which the interview was conducted.

The United States Supreme Court noted in Williams v. New York, supra, that "leaving a sentencing judge free to avail himself of out-of-court information . . . does secure to him a broad discretionary power, one susceptible of abuse." Williams, supra, 337 U.S. at 251, 69 S.Ct. at 1085, 93 L.Ed at 1344. Here, despite the fact that the district judge did not follow the

victim's recommendation as to the sentence, we have no way to determine whether the judge's discretion concerning the length of the sentence was affected by this interview. For that reason, we must vacate the sentence imposed on the defendant and remand for resentencing.

Defendant next alleges that the district judge erred in not granting him a new trial, in that defendant was able to bring new evidence before the court. He submitted an affidavit to the court containing the testimony of Dr. Stratford, a psychiatrist, who examined defendant after trial. Defense counsel indicates that prior to trial he had repeatedly asked defendant to submit to an examination, but defendant refused to do so. When he finally was examined, defendant was found to have been either unconscious or in a disassociative mental state at the time of the crime.

Section 46-16-702, MCA, governs the District Court's decision to grant a new trial. The district judge may do so "if required in the interest of justice." That decision is based on the discretion of the trial judge and will not be overturned unless this Court finds an abuse of discretion. State v. Lewis (1978), 177 Mont.474, 582 P.2d 346, 351, 35 St.Rep. 1089, 1095.

This Court has noted that applications for new trials on the ground of newly discovered evidence are not favored, for the reason that a defendant has already had ample opportunity to prepare and present his case. State v. Greeno (1959), 135 Mont. 580, 586, 342 P.2d 1052, 1055. However, in certain instances, the information discovered may require a new trial. In Greeno, supra, this Court set out certain rules:

> "(1)  That the evidence must have come to the knowledge of the applicant since the trial;
>
> "(2)  that it was not through want of diligence that it was not discovered earlier;
>
> "(3)  that it is so material that it would probably produce a different result upon another trial;"

" . . ." State v. Greeno, supra, 135 Mont. at 586, 342 P.2d at 1055.

Certainly, each case must be decided on its own facts. In the present case, we find that the evidence could have been discovered with due diligence. Defendant was encouraged by counsel to have an evaluation before trial, but it was only after a guilty verdict was returned that defendant decided to look into a possible defense of mental disease or defect. This is not a sufficient reason for the District Court to grant a new trial. Defendant waived his right to rely on that defense and to allow him to do so now would create a problem of possible multiple trials. A defendant could gamble on a verdict of "not guilty" at trial, but if convicted, he could then come back to court with the defense of mental disease or defect.

The district judge did not abuse his discretion in denying the motion for a new trial. Despite the existence of newly discovered evidence, the judge was correct in finding that it could have easily been discovered prior to trial.

Appellant next points out that the district judge concluded that defendant was either a liar or a schizophrenic. Defense counsel contends that this conclusion, set out in the judge's "reasons for sentencing" memorandum, was based on incorrect information which defendant did not have an opportunity to refute.

Because of our decision that the defendant's sentence must be vacated and the case remanded for resentencing, we need not address this issue. Defendant is aware of the information contained in the presentence report and can prepare to refute any information which he considers to be erroneous.

The jury found defendant guilty on October 15, and he was sentenced on November 9 to ten years on each count, to be served concurrently. At that time, Judge Gary refused to designate him as either "dangerous" or "nondangerous" because he wanted a psychological evaluation of defendant done. Defendant was

declared "nondangerous" on March 14, 1980. Appellant contends that this delay in designation constitutes cruel and unusual punishment and should be void for lack of certainty.

Appellant cites no authority to support his contention that this failure to so designate him constitutes cruel and unusual punishment and we find no merit in this claim. In Gregg v. Georgia (1976), 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859, 874-75, the Supreme Court determined that "at least . . . the punishment must not involve unnecessary and wanton infliction of pain . . . Second, the punishment must not be grossly out of proportion to the severity of the crime." There are no such allegations here.

As to the uncertainty caused by the delay, section 46-18-102, MCA, provides that the sentence must be rendered within a "reasonable time." This Court has not defined "reasonable time," but most jurisdictions relegate the decision of reasonable time to the discretion of the sentencing judge. A. Campbell, Law of Sentencing, (1978), §71. Delays will be upheld if they are found to be in the interests of justice, Treakle v. United States (9th Cir. 1964), 327 F.2d 82, 83, and allowing the judge to obtain more information about the offender has been found to be in the interest of justice. Bolduc v. U.S. (5th Cir. 1966), 363 F.2d 832, 833-34.

In this case, it appears that the district judge was concerned with treating defendant justly by requesting the evaluation. Any delay appears to have been in the best interests of the defendant and was reasonable under the circumstances. Additionally, the lack of designation requires that the defendant be considered nondangerous for purposes of parole. Section 46-18-404(3), MCA. Thus we find that there was no prejudice to the defendant.

The district judge denied defendant's request to be present at a post-conviction hearing held to determine whether

defendant was eligible for bail pending appeal. Appellant contends that defendant's presence was required.

Defendant is not required to be present at proceedings occurring after the verdict, because such proceedings are not part of the trial. State v. Peters (1965), 146 Mont. 188, 405 P.2d 642. In Peters, defendant was not present at a motion for a new trial, which this Court found was not error. State v. Peters, supra, 146 Mont. at 197, 405 P.2d at 647. The same reasoning applies here.

Appellant argues that the court should have had the benefit of seeing Higley's demeanor and his attitude toward the court. This argument is also without merit. The district judge had a week-long trial during which to view defendant.

Appellant's last claim is totally frivolous. The State concedes that the defendant has a right to all relevant portions of the transcript for purposes of appeal. However, the State asserts that defendant has not requested any portions of the transcript which have not been furnished to him, nor does the appellant specify any portions which he has not received. There is no error.

We affirm the defendant's conviction. We vacate the sentence and remand for resentencing.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 23 -