No. 81-239

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

THE STATE OF MONTANA,

Plaintiff and Appellant,

vs.

EMIL LONGNECK,

Defendant and Respondent.

---

Appeal from: District Court of the Twelfth Judicial District,
In and for the County of Hill
Honorable B. W. Thomas, Judge presiding.

Counsel of Record:

For Appellant:

Hon. Mike Greely, Attorney General, Helena, Montana
Chris Tweeten argued, Assistant Attorney General, Helena,
Montana
Ronald W. Smith, County Attorney, Havre, Montana

For Respondent:

Morrison, Ettien and Barron, Havre, Montana
J. Chan Ettien argued, Havre, Montana

---

Submitted: October 28, 1981

Decided: December 22, 1981

DEC 23 1981
Filed:

_Thomas J. Kearney_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

On November 19, 1980, Emil Longneck was charged with deliberate homicide under a felony-murder theory in the District Court of the Twelfth Judicial District, Hill County. A jury found him not guilty of deliberate homicide but guilty of the lesser-included offense of aggravated assault. Upon motion by the defendant, the District Court entered an order acquitting the defendant notwithstanding the verdict. The State appeals the District Court's order. We reverse.

The deliberate homicide charge arose from the death of Curtis Alexander, whose body was found on a street in Havre, Montana, at approximately 3:00 a.m., on August 7, 1980. Alexander had been drinking at various bars in Havre during the evening of August 6 and the early morning of August 7. His companions that evening were his sister, Karen Alexander, and a friend, Daryl Kirkaldie.

The defendant knew the Alexanders and he made repeated efforts throughout the night to convince Karen Alexander to go out with him. His advances were declined, however, and he soon began to harass Kirkaldie, whom he viewed as a rival for Karen Alexander's affections. Shortly before 2:00 a.m., Kirkaldie and the defendant had a brief scuffle outside Lee's Tavern. In the course of the fight the defendant was knocked to the ground.

Immediately following the encounter with the defendant, Kirkaldie, Karen Alexander, and Curtis Alexander began walking from Lee's Tavern to another bar. The defendant testified that he decided to get even with Kirkaldie and toward that end he found a "stick" in a nearby alley. He

ran up behind the three as they were walking and delivered a single blow with the stick to Curtis Alexander's head. The defendant apparently believed that he was striking Kirkaldie. The blow, which knocked Alexander to the ground, was audible a half a block away. After striking Alexander, the defendant ran from the scene. Kirkaldie and Karen Alexander chased the defendant but they were unable to catch him. When they returned to the scene of the attack they found Alexander lying flat on his back. They helped him to his feet and handed him his hat, which had been knocked off in the attack. Alexander did not appear to be injured and he indicated that he was all right. The three then continued walking. After they had gone about a block and a half Curtis Alexander expressed a desire to go to the hospital. He left the other two and walked by himself toward the hospital. Less than an hour later his body was found in a pool of blood approximately two blocks from where he was last seen by Kirkaldie and Karen Alexander.

An autopsy revealed four head injuries and several lacerations and bruises on Alexander's arms. The doctor's testimony indicates that these injuries caused Alexander's death and were sustained in a single attack which occurred at the place where the body was found.

The facts, then, are relatively simple. Curtis Alexander was the victim of two separate assaults on that summer night. The first occurred as he walked down the street with his sister and his friend. This first assault, although it knocked Alexander to the ground, did not lead to his death. The second assault took place a while later as Alexander walked alone. It was the second assault which caused his death. The defendant admits committing the first assault,

but, he denies it constituted an "aggravated" assault, under section 45-5-202, MCA. The prosecution did not attempt to prove that the defendant committed the fatal, second assault.

The issue presented is whether the District Court erred in holding that the jury convicted the defendant of an aggravated assault with which he was not charged.

The information charging the defendant reads as follows: "[The county attorney] . . . files herein this information, charging and accusing the said defendant, Emil Longneck with the crime of deliberate homicide, section 45-5-102(1)(b), MCA, 1978." Thus, the charge named in this portion of the information is deliberate homicide. Under this charge the defendant could also have been convicted of the lesser-included offense of aggravated assault, but that conviction would have to rest on the facts surrounding the fatal, second assault. Section 46-11-501(2), MCA. Neither of these crimes was proven at trial. The defendant was convicted of an aggravated assault, but it was not the assault included in the charge of deliberate homicide because it was not the fatal assault. Thus, the second assault is named in the information but the first assault was proven at trial.

The process of charging the defendant is saved from fatal defect, however, by a short recitation of facts at the bottom of the information and a lengthy narrative of facts contained in the motion for leave to file the information. Apparently, at the time of filing the information, the police and the county attorney mistakenly believed that the first assault caused Alexander's death. Each recital of facts, therefore, described the nonfatal, first assault which was proven at trial.

This Court has stated that the contents of the affidavit supporting a motion for leave to file an information may be considered in determining the meaning of the language contained in the information. State v. Dunn (1970), 155 Mont. 319, 472 P.2d 288, 294. In the present case the motion for leave to file serves as the supporting affidavit, and may therefore be considered in determining the meaning of the language contained in the information. Defendant's attorney acknowledged receipt of both the information and the motion for leave to file the information. The test to be applied in judging the sufficiency of an information is whether a person of common understanding would know what is intended to be charged. State v. Kirkland (1979), ___ Mont. ___, 602 P.2d 586, 590, 36 St.Rep. 1963, 1966. "The general rule is that when the facts, acts and circumstances are set forth with sufficient certainty to constitute an offense, it is not a fatal defect that the complaint gives the offense an erroneous name." State v. Schnell (1939), 107 Mont. 579, 88 P.2d 19, 22. It is clear from a reading of the facts set forth in the information and the leave to file the information that the state intended to prove the nonfatal, first assault as part of its deliberate homicide theory.

Ideally, the information should have named, in addition to the deliberate homicide charge, a separate count of aggravated assault to cover the nonfatal, first assault; or, it should have charged the defendant with only the nonfatal, first assault. Despite this inaccuracy in naming the offense, the facts detailed in the information and in the motion for leave to file the information served to inform the defendant of what was intended to be charged and against what he was

required to defend.  He could not have been surprised or misled at trial.

Based upon the foregoing, we reverse the District Court and reinstate the jury's verdict.  We remand to the District Court for further proceedings.

_____
                    Justice

We Concur:

_____
      Chief Justice

_____

_____

_____
      Justices