No. 82-154

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

THE STATE OF MONTANA,

Plaintiff and Respondent,

vs.

EMIL LONGNECK,

Defendant and Appellant.

Appeal from: District Court of the Twelfth Judicial District,
In and for the County of Hill
Honorable Bernard W. Thomas, Judge presiding.

Counsel of Record:

For Plaintiff:

Mike Greely, Attorney General, Helena, Montana
Ronald Smith, County Attorney, Havre, Montana

For Defendant:

Morrison, Ettien, Barron & Young; J. Chan Ettien,
Havre, Montana

Submitted on briefs: August 12, 1982

Decided: DEC - 8 1982

Filed: DEC 8 - 1982

_____
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This case was before this Court on a previous occasion, State v. Longneck, 38 St.Rep. 2160, 640 P.2d 436. At that time we reversed the District Court which acquitted the defendant of aggravated assault despite the jury's verdict of guilty on that charge. On remand, the District Court of the Twelfth Judicial District, Hill County, sentenced the defendant to two (2) years imprisonment, defendant appeals his conviction and sentence.

We will now briefly summarize the facts for a more complete recitation, see State v. Longneck, supra.

The charges in this case stem from incidents that occurred early in the morning of August 7, 1980. The victim, Curtis Alexander, his sister, Karen, and a friend, Daryl Kirkaldie were in Lee's Tavern in Havre. Shortly before closing time Kirkaldie and the defendant got into a short scuffle outside of Lee's. In the course of this scuffle the defendant was knocked to the ground.

Immediately after the altercation, Kirkaldie, Karen Alexander and the victim left Lee's on foot. The defendant got up and proceeded down an alley, where he found a stick lying in the roadway and decided to get even with Kirkaldie. He picked up the stick and proceeded in the direction that the victim and his companions had gone. He approached the three from the rear and struck Curtis a single blow to the back of the head with the stick apparently thinking him to be Kirkaldie. Karen and Kirkaldie pursued the defendant but were unable to catch him. Upon returning to the site of the assault they found Curtis still on the ground. He was lying flat on his back. They assisted him to his feet. He appeared uninjured and at that time stated he was all right. A short time later though, he expressed a desire to go to the hospital. At that point he left his companions and proceeded in the general direction of the hospital. Less than an hour later he was found dead a short distance from where he left his companions.

It is clear that Curtis was the victim of two separate assaults that morning. State v. Longneck, supra. The first occurred while he was with his sister and friend and was not the cause of death. The other must have occurred while he was alone and caused his death. The State never connected Longneck with the homicide or second assault but proved the first assault at trial, State v. Longneck, supra. This is the charge on which he was convicted. State v. Longneck, supra.

Longneck raises several issues on appeal:

1. Whether the jury convicted Longneck on a charge of aggravated assault not included in the information?

2. Whether Longneck's fifth and sixth amendment rights, under the United States Constitution were violated by convicting him of an uncharged offense?

3. Whether Longneck's rights under Article II, Section 17, 20, 24 and 25 of the Montana Constitution were violated?

4. Whether this Court has the power to change a jury's verdict and conviction on a lesser included charge to that of guilty on the unincluded separate and unrelated charge?

5. Whether the defendant was properly arraigned under section 46-12-202, MCA?

6. Whether a directed verdict should have been granted at the close of the state's case-in-chief or at the close of the testimony?

7. Whether the jury was instructed on the separate aggravated assault?

8. Whether there was sufficient evidence to convict Longneck of aggravated assault?

The first four of the above issues dealing with the claim that the defendant was found guilty of an uncharged offense are easily disposed of. Our decision in State v. Longneck, supra, where we found that the information coupled with the facts set out in the motion for leave to file it were sufficient to charge the defendant with the nonfatal first assault, is the law of the

- 3 -

case. We have previously set down the rule to be followed when dealing with law of the case in Englund v. Englund (1979), ___ ___ Mont. _____, 603 P.2d 1048, 36 St.Rep. 2211, and cases cited therein where we stated:

> "'The rule is well estabished and long adhered to in this state that where, upon an appeal, the Supreme Court, in deciding a case presented states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal; . . .' Carlson v. Northern Pac. R. Co. 86 Mont. 78, 281 P. 913, 914." 603 P.2d at 1049.

Thus, these first four issues are taken care of by our holding in the previous case, which is the law of the case and must be followed. Englund v. Englund, supra.

Appellant also raises the question of whether Longneck was improperly arraigned under section 46-12-202, MCA. That section requires that the defendant be advised by the court "of the nature of the crime charged against him" and "the punishment set forth by statute for the crime charged."

It appears that at the time of his arraignment the appellant was only informed of the deliberate homicide charge and the punishment for it. However, it is clear from the defense put on that he was aware that he was charged with the first aggravated assault. In the examination of witnesses by the defendant's attorney, he tried to show that the stick used in the first assault was not a weapon, and that there was no serious bodily injury as a reuslt of the first assault. These factors, coupled with our prior decision holding that the information viewed in conjunction with the motion for leave to file it were sufficient to charge the defendant with aggravated assault, show that the defendant had sufficient information to know what he was charged with, and that he indeed knew he was charged with the first aggravated assault.

The purposes of arraignment, set out in sections 46-12-101 and 46-12-202, MCA, to call the defendant into court to answer

the charges against him and to inform him of certain rights, were waived by the defendant when he proceeded to trial and defended against the aggravated assault charge.

Arraignment may be so waived without any violation of the due process clause "so long as the accused had sufficient notice of the accusation and an adequate opportunity to defend himself." Garland v. Washington (1914), 232 U.S. 642, 645, 34 S.Ct. 456, 58 L.Ed. 722 772. The defendant in this case waived his arraignment by proceeding to trial and defending against the alleged offense of aggravated assault.

Also, in his reply brief appellant claims that the failure to arraign him constitutes double jeopardy. He contends that a conviction on either the deliberate homicide charge or one of its lesser included offenses would not have prevented a second prosecution on the first aggravated assault charge because he was never arraigned. However, this would not be the case. The defendant was charged with the first assault, State v. Longneck, supra, and went to trial and defended against that charge, as pointed out above, thereby waiving his arraignment. After such a trial the State would not again be allowed to charge the defendant with the same crime, merely because of a technical defect, such as improper arraignment, which as Garland points out, may be waived. Any such attempt to re-try the defendant would constitute double jeopardy and is specifically prohibited by Article II, Section 25 of the Montana Constitution.

Appellant also contends that a directed verdict should have been granted at the close of the States case-in-chief, or at least at the close of all of the evidence. However, as pointed out by section 46-16-403, MCA, it is within the District Court's discretion whether to dismiss an action at the close of the States case or all the evidence. "Further, a directed verdict should only be given where there is no evidence on which the jury could base a conviction. Paulson, supra, State v. Thompson (1978), 576 P.2d 1105, 35 St.Rep. 343." State v. White (1980),

- 5 -

605 P.2d 191, 194, 37 St.Rep. 84.

In the present case there is evidence on which a jury could base a conviction. There was testimony from the victims companions that he was struck from behind, fell to the ground, was slow to get up and a short time later said he was going to the hospital. They also testified that they heard a loud "thump" or "thud" and saw the defendant with an eighteen to twenty-four inch long, round object in his hand. Testimony of other witnesses corroborates their testimony as to the sound, its loudness and the approximate size and shape of the object which the defendant held. Also, the defendant himself characterized the weapon as a "light stick."

Appellant next contends that the jury was not instructed on the separate charge of aggravated assault stemming from the first assault. He predicates error on the rule enunciated by this Court that "[i]t is a basic rule in this state that the trial court's instructions must cover every issue or theory having support in the evidence." State v. Gopher (1981), 633 P.2d 1195, 38 St.Rep. 1521; State v. Buckley (1976), 171 Mont. 238, 557 P.2d 283; State v. Taylor (1973), 163 Mont. 106, 515 P.2d 695; State v. Thomas (1966), 147 Mont. 325, 413 P.2d 315.

However, the above cited cases are distinguishable from the present one. In those cases instructions were either given and then withdrawn or refused by the trial court, while in the present case, no instruction was offered by either side drawing a clear distinction between the totally separate first assault of which the defendant was convicted, State v. Longneck, supra, and the lesser included offense of aggravated assault in connection with the deliberate homicide charge. This Court has set out the general rule covering such a situation in the cases of State v. Bashor (1980), 614 P.2d 470, 37 St.Rep. 1098; and State v. Harvey (1979), 603 P.2d 661, 36 St.Rep. 2035. In those two cases it was held "that error may not be predicated upon the failure to give an instruction when the instruction was not offered. State v.

Harvey (1979), 36 St.Rep. 2035, 2038. Failure to offer the instruction removes the cause of error. . ." State v. Bashor, 614 P.2d at 487.

This Court has previously placed the responsibility of providing any special instructions on the party desiring them, based on section 46-16-401, MCA, State v. Harvey, supra. This statute has been construed as mandatory in the Harvey decision, and cases cited therein, thus, if the defendant desired a distinction made between the separate assault and that of the lesser included offense he should have offered an instruction to that effect.

The final issue raised by appellant is whether the evidence was sufficient to convict him of aggravated assault. He contends that the State failed to prove use of a weapon capable of inflicting death or serious bodily injury as required by sections 45-2-101(71) and 45-5-202(1), MCA.

In support of this contention he cites the case of State v. Deshner (1978), 175 Mont. 175, 573 P.2d 172. In that case we held that the evidence was insufficient to support a conviction on aggravated assault charges as it was not proven that the slingshot and projectile were a weapon. The defense then argues that since there was no apparent mark left on the victim after the assault, there is not evidence as to the composition of the stick and since the victim initially stated that he was all right, there is no proof that a weapon was used.

However, it should be noted that the trier of fact need not have the weapon before it in order to convict of aggravated assault when the circumstantial evidence indicates a weapon was used by the assailant, State v. Lozeau, 39 St.Rep. 1729.

This is precisely the case we are faced with here, because despite the weapon never being found there is evidence in the record that would allow the trier of fact to conclude a weapon was used. First, it should be noted that all the witnesses testified the object, which the defendant used to strike Curtis was eighteen to twenty-four inches in length and round in shape.

Kirkaldie stated that when he saw the defendant after Curtis was hit that the defendant was in a bent over position with both hands on the object. The victim was knocked to the ground and remained there for a period of time. The thud from the blow was audible for some distance away. Also, despite Curtis' initial statements that he was all right, he shortly after the incident expressed his wish to go to the hospital and left his companions to do so. Finally, it should be noted the defendant himself characterized the object as a stick. His exact words were a "light stick."

When all the evidence is viewed in the light most favorable to the State, the conviction cannot be overturned where such evidence would allow a rational trier of fact to find all the elements of the crime beyond a reasonable doubt. State v. Lozeau, 39 St.Rep. at 1731, and cases cited therein. In this case, the circumstantial evidence described above provides substantial evidence to support the verdict rendered by the jury and therefore it must stand; State v. White, 605 P.2d at 195.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

- 8 -