No. 95-012

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

     Plaintiff and Respondent,

    v.

CLAYTON ANDREWS,

     Defendant and Appellant.

# FILED

DEC 19 1995

_Ed Smith_
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
                In and for the County of Yellowstone,
                The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Gary E. Wilcox, Yellowstone County Public Defenders,
          Billings, Montana

     For Respondent:

          Hon. Joseph P. Mazurek, Attorney General,
          Carol Schmidt, Ass't Attorney General, Helena,
          Montana

          Dennis Paxinos, Yellowstone County Attorney,
          Marcia Good Sept, Deputy County Attorney, Billings,
          Montana

Submitted on Briefs:  November 2, 1995

Decided:  December 19, 1995

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Clayton Andrews (Andrews) was convicted by jury verdict of two counts of felony aggravated assault and sentenced to a ten-year term of imprisonment on each count, with the sentences to run concurrently. He appeals from the judgment and sentence entered by the Thirteenth Judicial District Court, Yellowstone County, on one count only. We reverse.

The issue on appeal is whether sufficient evidence supports the jury's guilty verdict on Count I, the aggravated assault alleged to have occurred on or about March 2, 1993.

Andrews and Dawn Lamar (Lamar), have two daughters, Ashley and Brittany. Andrews cared for the children while Lamar worked her 4:00 a.m. to 2:00 p.m. shifts. Lamar cared for them while Andrews was at work, generally from 3:00 p.m. until 11:00 p.m.

Lamar did not notice any problems with Brittany when putting her to bed on March 1, 1993. As she left for work on March 2, she observed that Brittany was sleeping. Andrews called Lamar at work at approximately 7:00 that morning. He told her that Brittany had stopped breathing and that he needed Brittany's doctor's telephone number. Andrews also called 911 and an ambulance arrived soon thereafter. Richard Oberweiser, an emergency medical technician, examined Brittany. He informed Andrews that Brittany did not appear to be ill enough to require an ambulance to transport her to the hospital.

Lamar returned home within 20 minutes of Andrews' call, by which time the ambulance had left the apartment. Lamar changed

2

Brittany's clothes because they had vomit on them and, immediately thereafter, she and Andrews took Brittany to see Dr. Lawrence A. Hemmer, Jr., a family practitioner who was Brittany's regular doctor. Dr. Hemmer examined Brittany and determined that she was suffering from esophageal reflux; in everyday terminology, Brittany was "spitting up." Dr. Hemmer prescribed Reglan to control the reflux.

Brittany's condition worsened over the next few days and Lamar took her back to Dr. Hemmer on March 8. In Dr. Hemmer's view, Brittany's loss of 23 ounces in 6 days was very unusual. The weight loss, together with Brittany's fever and lethargy, formed the basis for Dr. Hemmer's decision to admit her to the hospital.

Dr. Hemmer also was concerned that Brittany had some type of infection, but he ruled out that possibility based on the results of various tests. Brittany became rehydrated and gained most of her weight back while she was in the hospital; she was discharged on March 11, 1993. Dr. Hemmer did not know at that time what caused Brittany to become ill. Two days later, Dr. Hemmer did a follow-up examination of Brittany and noted that she seemed to be doing better.

On March 14, 1993, Brittany was transported to the hospital by ambulance. Dr. John Patrick Sauer, a pediatrician with special training in the area of child abuse and neglect, examined her and, based on her symptoms and various test results, concluded that she had suffered a nonaccidental trauma and had shaken baby syndrome. He also concluded that shaken baby syndrome was the proper

3

diagnosis for Brittany when she was first hospitalized on March 8. Dr. Hemmer agreed with Dr. Sauer in this regard, concluding that he had misinterpreted Brittany's earlier symptoms and, as a result, had "missed" shaken baby syndrome.

In June of 1993, the State of Montana (State) charged Andrews with two counts of felony aggravated assault pursuant to § 45-5-202(1), MCA; the State alleged that the first assault occurred on or about March 2, 1993, and that the second occurred on or about March 14, 1993. Andrews pled not guilty to both counts. The case was tried to a jury which convicted Andrews of both counts of aggravated assault. The District Court sentenced Andrews to a ten-year term of imprisonment on each count, with the sentences to run concurrently.

Andrews appeals solely from his conviction on Count I. Accordingly, we limit our review to that charge, the aggravated assault of Brittany which allegedly occurred on or about March 2, 1993. Additional facts are set forth in the following discussion where necessary.

> Does sufficient evidence support the jury's guilty verdict on Count I, the aggravated assault alleged to have occurred on or about March 2, 1993?

Andrews argues on appeal that the State presented insufficient evidence to prove its case regarding the aggravated assault alleged to have occurred on or about March 2, 1993. While he presents several contentions in this regard, Andrews' argument that there is insufficient evidence on the "serious bodily injury" element of the offense of aggravated assault is dispositive.

4

Our standard in reviewing the sufficiency of the evidence for a criminal conviction is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. State v. Mergenthaler (1994), 263 Mont. 198, 203, 868 P.2d 560, 562 (citing State v. McLain (1991), 249 Mont. 246, 815 P.2d 147, 150).

Section 45-5-202(1), MCA, provides that "[a] person commits the offense of aggravated assault if he purposely or knowingly causes serious bodily injury to another." As charged in this case, serious bodily injury is statutorily defined as "bodily injury which creates a substantial risk of death or which causes . . . protracted loss or impairment of the function or process of any bodily member or organ." Section 45-2-101(59), MCA (1991).

The evidence from which a jury could find that Andrews caused mere bodily injury to Brittany by shaking her on March 2, 1993, is overwhelming. Brittany's condition deteriorated after Dr. Hemmer examined her on March 2 and, as a result, she was hospitalized March 8 through 11 due to severe dehydration, weight loss, a fever and lethargy. However, no one testified or even implied that Brittany's injuries and these conditions resulting from the March 2 shaking were life-threatening or, in the words of § 45-2-101(59), MCA (1991), that they created a "substantial risk of death." Moreover, the State did not present evidence that Brittany has protracted loss or impairment of the function or process of any bodily member or organ as a result of the March 2 shaking.

5