
DA 07-0520

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 404

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JONATHAN JAMES TOTH,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Butte/Silver Bow, Cause No. DC 06-111
Honorable Kurt Krueger, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jim Wheelis, Chief Appellate Defender; Koan Mercer, Assistant
Appellate Defender; Helena, Montana

      For Appellee:

          Hon. Mike McGrath, Montana Attorney General; Jonathan M. Krauss,
Assistant Attorney General; Helena, Montana

          Robert M. McCarthy, Butte-Silver Bow County Attorney; Mike Clague,
Deputy County Attorney; Butte, Montana

Submitted on Briefs:  September 17, 2008

Decided:  December 2, 2008

Filed:

_____
                    Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     A jury in the Second Judicial District Court convicted Jonathan Toth of assault with a weapon.  Toth was sentenced to five years at Montana State Prison, with the imposition of conditions of supervision if he receives an earlier release.  Toth appeals, raising the following issues:

¶2     1.  Did the District Court err in denying Toth's motion to dismiss at the close of the State's case in chief for the State's failure to meet its burden of proof?

¶3     2.  Did Toth's conviction for assault with a weapon subject him to double jeopardy?

**BACKGROUND**

¶4     Police arrested Toth on July 2, 2006, for misdemeanor assault, following reports of his involvement in an altercation in the men's restroom of the Irish Times Pub in Butte.  Two men, Tyler Dockter and Matthew Palmer, told police that Toth and another man, Mike Gardipee, verbally threatened and punched them in the restroom.  They further reported that the fight escalated when Toth pulled a knife out of his pocket and attempted to stab Dockter in the stomach.  The State later filed an Information which charged Toth with assault with a weapon, a felony, alleging that Toth caused bodily injury with the knife or, alternatively, caused reasonable apprehension of serious bodily injury with the knife.

¶5     After the State presented its case in chief, Toth moved for a directed verdict[1] on the ground that the State had not met its burden of proof.  The court denied the motion, concluding the testimony presented satisfied the State's burden and the case was sufficient to go to the jury.  After completion of the two-day trial, the jury found Toth guilty of assault with a weapon for causing reasonable apprehension of serious bodily injury with a weapon.

¶6     Toth appeals.

## STANDARD OF REVIEW

¶7     This Court reviews de novo a district court's conclusion regarding the sufficiency of evidence to support a conviction.  *State v. Trujillo*, 2008 MT 101, ¶ 8, 342 Mont. 319, ¶ 8, 180 P.3d 1153, ¶ 8.  The Court views the evidence in the light most favorable to the prosecution, and determines whether a rationale trier of fact could have found the defendant guilty of the crime charged beyond a reasonable doubt.  *State v. Andrews*, 274 Mont. 292, 295, 907 P.2d 967, 969 (1995).

¶8     We have reviewed the merits of a defendant's double jeopardy claim, despite the failure to raise the issue in the district court, where the court could have determined from the record that the government lacked the power to charge a defendant. *State v. Cech*, 2007 MT 184, ¶ 9, 338 Mont. 330, ¶ 9, 167 P.3d 389, ¶ 9.  We review a district court's

---

[1] A motion for directed verdict in a criminal case is properly denominated as a motion to dismiss for insufficient evidence.  *See State v. McWilliams*, 2008 MT 59, ¶ 36, 341 Mont. 517, ¶ 36, 178 P.3d 121, ¶ 36.

conclusions of law to determine if they are correct. *State v. Boucher*, 2002 MT 114, ¶ 10, 309 Mont. 514, ¶ 10, 48 P.3d 21, ¶ 10.

## DISCUSSION

¶9 **1. Did the District Court err in denying Toth's motion to dismiss at the closure of the State's case in chief for the State's failure to meet its burden of proof?**

¶10 Mont. Code Ann. § 45-5-213 sets forth the essential elements of assault with a weapon as follows:

> A person commits the offense of assault with a weapon if the person purposely or knowingly causes:
>
> (a)    bodily injury to another with a weapon; or
> (b)    reasonable apprehension of serious bodily injury in another by use of a weapon or what reasonably appears to be a weapon.

"Serious bodily injury" includes a bodily injury that:

> i.    creates a substantial risk of death
> ii.    causes serious permanent disfigurement or protracted loss or impairment of the function or process of a bodily member or organ; or
> iii.    at the time of injury, can reasonably be expected to result in serious permanent disfigurement or protracted loss or impairment of the function or process of a bodily member or organ.

Section 45-2-101(66), MCA. A "weapon" is broadly defined as "an instrument, article, or substance that, regardless of its primary function, is readily capable of being used to produce death or serious bodily injury." Section 45-2-101(79), MCA; *see also State v. R.B. "J" C*, 2004 MT 254, ¶ 15, 323 Mont. 62, ¶ 15, 97 P.3d 1116, ¶ 15 (threatened use of an un-lit cigarette lighter can cause reasonable apprehension of serious bodily injury).

¶11 Toth argues that no reasonable trier of fact could have concluded that the knife he allegedly used to threaten the victims with could have caused a reasonable apprehension

4

of serious bodily harm, because the jury did not have enough information regarding the characteristics of the knife. Toth notes that the knife was never found and the eyewitnesses were unable to specifically describe the blade of the knife. Toth contends that, while a pocket knife might support a finding of apprehension of simple bodily injury, there was "no evidence" which would support a finding of *serious* bodily injury. He argues that evidence regarding "the length of the alleged blade and the corresponding physiological effects of an abdominal wound from such a blade" was required. Toth relies primarily on *State v. Andrews*, wherein we held the State had failed to present sufficient evidence that a victim's injuries created a substantial risk of death. In response, the State discusses the evidence offered against Toth, including his statement to Dockter that "I'm going to kill you," the testimony of the victims about Toth drawing a knife, assaulting Dockter with it, and the cuts on Dockter's arm, arguing the evidence was sufficient to support the verdict that Toth had caused reasonable apprehension of serious bodily injury.

¶12　　The issue here is not identical to the issue in *Andrews*. There, a father was convicted of aggravated assault after a jury found he had shaken his baby and caused the child serious bodily injury. *Andrews*, 274 Mont. at 295, 907 P.2d at 969. The State elicited testimony from two physicians who established the child had suffered severe dehydration, weight loss, a fever, and lethargy resulting from "shaken baby syndrome." *Andrews*, 274 Mont. at 294-95, 907 P.2d at 968-69. We held that because no one had testified that the child's injuries were life threatening, a fact-finder could have found from

5

the evidence that the child suffered bodily injury, but not *serious* bodily injury as defined in the code. *Andrews*, 274 Mont. at 295, 907 P.2d at 969. Here, unlike *Andrews*, the State did not allege that Toth caused serious bodily injury, for which proof of the extent of the injury would be necessary. Rather, the State alleged that Toth, by use of a knife, caused reasonable apprehension of a serious bodily injury. Thus, the focus of the charge was the fear or apprehension that such an injury would occur—not that it did occur—and whether that fear was reasonable.

¶13 To prove the elements of this charge, the State presented witnesses who testified that they had seen Toth wield a knife and that he had threatened to kill Dockter. Evidence of cuts which Toth made upon Dockter was introduced, and Dockter testified that he was "petrified" that Toth was going to stab him in the stomach. Dockter testified that the knife was a "locking blade" knife that could fit in Toth's pocket. Though a knife was not recovered, we have held that the trier of fact need not have the actual weapon before it in order to convict a defendant of assault when the circumstantial evidence supports a finding that the defendant used a weapon. *State v. Longneck*, 201 Mont. 367, 375, 654 P.2d 977, 981 (1982).

¶14 Viewing the evidence in favor of the State, the jury could have found beyond a reasonable doubt that Toth's actions of wielding a knife, threatening to kill, and cutting the victim caused the victim reasonable apprehension of being stabbed and seriously injured, even though the knife was not described with specificity or the nature of

6

potential stab wounds it could inflict proved by medical evidence. We thus conclude that the District Court properly denied the motion to dismiss.

¶15 **2. Did Toth's conviction for assault with a weapon subject him to double jeopardy?**

¶16 The PSI prepared for Toth's sentencing listed as part of Toth's criminal history, a $170 bond forfeiture for disorderly conduct in Butte, Montana, on July 2, 2006, the same day of the altercation at the Irish Times Bar. No other information exists in the record relating to this event, and Toth did not raise a double jeopardy objection in the District Court.

¶17 Toth argues that if the bond forfeiture for disorderly conduct listed in the PSI arises from the same events which led to his assault charge, double jeopardy would bar the further prosecution for assault. He asks that we remand the case for an evidentiary hearing on this issue. In response, the State argues that the record is insufficient to demonstrate that the disorderly conduct matter had any connection to the events for which Toth was charged with assault and thus, Toth failed to meet his burden to provide a factual basis for his claim and the District Court could not have determined that the government lacked the power to bring the assault charge.

¶18 Article II, Section 25 of the Montana Constitution and the Fifth Amendment to the United States Constitution provide that "no person shall be twice put in jeopardy for the same offense." This prohibition against double jeopardy provides "protection against a separate prosecution for the same offense after acquittal, protection against a second prosecution for the same offense after conviction, and protection against multiple

7

punishments for the same offense." *State v. Barron*, 2008 MT 69, ¶ 14, 342 Mont. 100, ¶ 14, 179 P.3d 519, ¶ 14 (citing *State v. Anderson*, 1998 MT 258, ¶ 7, 291 Mont. 242, ¶ 7, 967 P.2d 413 ¶ 7. Section 46-11-504, MCA, bars the subsequent prosecution for an offense based on the same transaction for which a person has already been convicted.

¶19 Toth's double jeopardy claim is based on his contention that a bond forfeiture is synonymous with a conviction, and would bar an additional prosecution arising from the same transaction. However, even if the record was sufficient to demonstrate that these charges were related, Toth's claim would nonetheless fail.

¶20 The parties do not offer any authority suggesting that a bond forfeiture equates to a conviction for purposes of double jeopardy absent specific legislation to that effect. Faced with this same issue, the Supreme Court of South Carolina concluded otherwise, holding that, unless specified by the legislature, a bond forfeiture does not equal a conviction. *Scott v. S.C.*, 513 S.E.2d 100 (S.C. 1999). The *Scott* Court reasoned as follows:

> [A] Louisiana court stated in a defamation case that "[a] conviction is a judicial determination of guilt. A forfeiture of bond is a decision by the person charged not to appear for trial, thereby avoiding a judicial determination of guilt or innocence." *Hopkins v. Keith*, 348 So. 2d 999, 1002 (La. Ct. App. 1977) (affirming summary judgment for defendant newspaper sued because story failed to fully distinguish between bond forfeiture and conviction, a distinction that is unclear to much of the public). *See also* 8A Am. Jur. 2d *Bail and Recognizance* § 113 (1997) (bond forfeiture proceeding "does not involve the guilt or innocence, conviction or acquittal, of any person. Rather, a bail bond forfeiture and the judgment thereon against a surety is a civil action to enforce the surety's contract with the state"); 8 C.J.S. *Bail* §§ 5, 160-178 (1988) (discussing purpose and forfeiture of bail bond).

> This Court has held that a bond forfeiture is equivalent to a conviction when the Legislature has defined it as a conviction by statute . . .
>
> We have found no case in South Carolina or elsewhere, and the parties have cited none, in which a court explicitly declared that a bond forfeiture is equivalent to a conviction, absent a statute declaring it to be a conviction.

*Scott*, 513 S.E.2d at 103-04. The *Scott* Court also noted that other states had reached the same conclusion. *Scott*, 513 S.E.2d at 103, n. 2.

¶21 A "conviction" is defined in Montana's code as "a judgment or sentence entered upon a guilty or nolo contendre plea or upon a verdict or finding of guilt rendered by a legally constituted jury or by a court of competent jurisdiction authorized to try the case without a jury." Section 46-1-202(7), MCA. This definition does not include a bond forfeiture. The Legislature has expanded the definition of conviction to include bond forfeitures for particular purposes only. For example, the Legislature defined "conviction" to include bond forfeitures for purposes of the revocation or suspension of drivers' licensure and other motor vehicle regulations. Section 61-5-213, MCA ("the term 'conviction' means: . . . (4) a forfeiture of bail or collateral deposited to secure the person's appearance in court . . ."). The Legislature also specifically defined "conviction" to include bond forfeitures for purposes of other offenses. *See* §§ 45-5-206(3)(b), 45-5-220(5)(c), 45-5-621(2)(b), MCA. Otherwise, the Legislature consistently mentions them separately. *See* §§ 23-2-507(1), 37-47-341(5), 61-3-119(1)(b)(ii)(B), 87-1-102(2)(b), 87-4-427(1)(d), MCA.

¶22 Bond forfeiture is essentially a civil action. It "does not involve the guilt or innocence, conviction or acquittal, of any person." *Scott*, 513 S.E.2d at 253-54 (quoting

9

8 Am. Jur. 2d *Bail and Recognizance* § 113 (1997)). A bond forfeiture is not admissible as evidence "in any other civil action." Section 46-9-512(4), MCA. A person who fails to appear when the court so requires may be subject to criminal liability for bail-jumping or contempt, crimes which are separate and distinct from any civil liability. Sections 45-7-308, 309, MCA.

¶23 The law's general treatment of a bond forfeiture as a civil matter and the distinction made by the Legislature between bond forfeitures and criminal convictions, including the specific inclusion of forfeitures within the definition of "conviction" for particular purposes only, lead us to conclude that, even if Toth's felony assault charge arose out of the same transaction as the disorderly conduct, jeopardy did not attach by Toth's bond forfeiture, and his claim must therefore fail.

¶24 Affirmed.

/S/ JIM RICE

We concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ PATRICIA COTTER